# Exhibit C

# LINE OF CREDIT AGREEMENT

THIS AGREEMENT is entered into effective as of October 11, 2017, by and between MICHAEL RICATTO ("Ricatto"), and M3 INNOVATIONS UNLIMITED, INC., a Delaware corporation ("Borrower").

## RECITALS

WHEREAS, Ricatto desires to provide to Borrower, and Borrower desires to obtain from Ricatto, a line of credit with a maximum principle amount of TWO MILLION Dollars ($2,000,000.00) (the "Line of Credit"), on certain terms and conditions as set forth in this Agreement.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1. *Commitment.* Subject to and in accordance with the provisions of this Agreement, Ricatto agrees to make disbursements under the Line of Credit, and Borrower may draw upon in the manner and upon the terms and conditions expressed in this Agreement, amounts that shall not exceed the principle loan amount of two million dollars ($2,000,000), (the "Commitment Amount"). The Line of Credit shall be a revolving line of credit, against which disbursements may be made to Borrower, repaid by Borrower and additional disbursements made to Borrower, subject to the limitations contained in this Agreement; provided, that Ricatto shall have no obligation to make any disbursement (i) that would exceed the Commitment Amount or (ii) if there is an Event of Default or a Default (as defined below). The Line of Credit shall bear interest on the outstanding principal balance at an annual rate of twelve percent (12%) and three percent (3%) on any amount of the Line of Credit which has yet to be drawn upon, which interest and amortized portion of the outstanding principal shall be payable monthly, on the third day of each month, beginning on the thirteenth (13th) month following the effective date of this agreement. Interest accrued during the first twelve (12) months shall be amortized beginning on the thirteenth (13th) month over the remaining term of the loan. If not sooner paid or extended by the mutual agreement of the parties, all outstanding principal, accrued but unpaid interest and other outstanding sums due under this Agreement shall be paid in full on the 30th month anniversary of the first (1st) disbursement made under this agreement (the "Maturity Date").

2. *Advances.* Advances under the Line of Credit will be made under the following terms: (i) Borrower shall provide Ricatto at least three (3) business days' advance written notice setting forth the amount of advance; (ii) Ricatto shall provide confirmation of the notice within twenty four (24) hours of receipt; (iii) advances shall be made by Ricatto within twenty four (24) hours of confirmation of the notice.

3. *The Note.* Borrower's obligation to pay the principal of and interest on the Line of Credit shall be evidenced by a Promissory Note (the "Note"), substantially in the form attached hereto as Exhibit A, which shall (i) be duly executed and delivered by Borrower, (ii) be dated as of the date hereof, (iii) be in the stated principal amount of the Line of Credit, (iv) mature on the Maturity Date, (v) bear interest as provided in the Note, and (vi) be governed by this Agreement.

4. *Collateral.* In consideration of the Line of Credit, Borrower hereby grants to Ricatto a security interest in, and assigns and pledges to Ricatto the collateral ("Collateral") described in Exhibit B hereto, to secure the payment, performance and observance of all indebtedness, obligations and liabilities of Borrower to Ricatto under this Agreement and the Note.

5. *Default.* The occurrence of any of the following events shall constitute an "Event of Default" hereunder:
   a. The non-payment of any interest due and owing to Ricatto under the Line of Credit and such failure to make payment shall continue for a period of ten (10) days or longer from the due date.
   b. Violation by Borrower of any covenant or obligation contained in this Agreement or the Note, or breach of any representation or warranty contained herein or in the Note;
   c. Borrower (i) admits in writing its inability to pay its debts as they become due; (ii) files a petition under any chapter of the Federal Bankruptcy Code or similar law, state or federal, not or hereafter existing; (iii) makes an assignment for the benefit of its creditors; or (iv) is adjudged a bankrupt or insolvent; or
   d. Borrower, without prior written consent of Ricatto, is merged or consolidated with another entity, or sells, transfers or otherwise disposes of substantially all its assets to another person or entity other than in the ordinary course of business;

Upon occurrence of an Event of Default, Ricatto shall notify Borrower in writing. If the Event of Default is not cured within thirty (30) days after the giving of such notice of default, Borrower shall be deemed to be in default under this Agreement (a "Default").

6. *Default Rate and Acceleration.* Upon Default, Ricatto shall have the right to collect interest on the outstanding principal balance, together with accrued but unpaid interest under the Line of Credit at a rate equal to the lesser of (i) sixteen percent (16%) per annum; or (ii) the maximum allowable and applicable New York State statutory usury rate (the "Default Rate"). In addition to any other remedies which Ricatto has hereunder or by law, upon Default, at its option and upon written notice, Ricatto may declare the payment of outstanding principal balance and accrued but unpaid interest under the Line of Credit immediately due and payable. Upon any Default, Ricatto shall be entitled to recover any and all of its costs of collection, including reasonable attorney's fees.

7. *Enforcement of Collateral.* In addition to any other remedies which Ricatto has hereunder or by law, upon Default, Ricatto shall have the right to enforce its rights in the Collateral by giving notice of the Default to Borrower and foreclosing on the Collateral.

8. *Cumulative Remedies.* All remedies of Ricatto provided for herein are cumulative and shall be in addition to all other rights and remedies provided by law. The exercise of any right or remedy by Ricatto hereunder shall not in any way constitute a cure or waiver of default hereunder or invalidate any act done pursuant to any notice of default, or prejudice Ricatto in the exercise of any of its rights hereunder unless, in the exercise of its rights, Ricatto realizes all amounts owed to it under the Line of Credit.

9. Prepayment and Cancellation of the Line of Credit. Borrower shall have the right to prepay the Line of Credit, in whole or in part, at any time without penalty in accordance with the terms of the Note. In the event Borrower prepays the principle and interest prior to the Maturity Date, Borrower may elect at its sole discretion to terminate the line of credit.

10. *Representations and Warranties of the Borrower.* Borrower hereby represents and warrants as follows:

   a. Organization; Authority to Enter into Agreement. Borrower is a corporation, duly formed and validly in existence and in good standing under the laws of the State of Delaware. Borrower has full power and authority to enter into this Agreement and to execute and to carry out the provisions of this Agreement. The execution,

delivery and performance of this Agreement have been duly authorized by all necessary action of Borrower.
b. No Consents. The execution, delivery and performance by Borrower of this Agreement does not require consent, approval, authorization or license of any governmental authority or a third party.

11. *Force Majeure.*
   a. Definition. Force Majeure Events are those risks beyond the reasonable control of a party, incurred not as a product or result of the negligence of the afflicted party, which have a materially adverse effect on the ability of such party to perform its obligations. Force Majeure Events include but are not limited to earthquakes, floods, fire, plague, drought, crop failure, explosions and other natural disasters; terrorism or threats of terrorism, riots or civil disturbances; war and hostilities, whether declared or not; strikes, change of law or regulation, nuclear or chemical contamination, pressure waves from devices travelling at supersonic speeds, and failure of public infrastructure.
   b. Consequences of a Force Majeure Event.
      i. Liability. Except as otherwise provided for in this Section 11, either parties time to perform its obligations under this Agreement shall be tolled and extended through the Force Majeure Tolling Period (as such term is defined herein), and during the Force Majeure Tolling Period neither party shall incur any liability to the other party for any losses or damages of any nature whatsoever incurred or suffered by the other party or be in default under this Agreement, if and to the extent that it is prevented from carrying out those obligations by, or such losses or damages are caused by, a Force Majeure Event except to the extent that the relevant breach of its obligations would have occurred, or the relevant losses or damages would have arisen, even if the Force Majeure Event had not occurred. Notwithstanding the foregoing, interest in such amounts as provided for herein and in the Note, shall continue to accrue against all outstanding principal amounts and any amount of the Line of Credit which have yet to be drawn upon, during such Force Majeure Event, provided however that no default rate interests shall be imposed until after the expiration of the Force Majeure Tolling Period (as defined below).
      ii. Notice. Within five (5) business days following the date of commencement of a Force Majeure Event, and within five (5) business days following the date of termination of a Force Majeure Event, any party invoking it shall submit to the other party reasonable proof of the nature of the Force Majeure Event and of its effect upon the performance of the party's obligations under this Agreement.
      iii. Timing. Notwithstanding anything to the contrary contained in this Section 11, the tolling of liability and protections against breaches of obligations as provided in Section 11(b)(i) above shall extend for the shorter of (i) the time period between the date of commencement of a Force Majeure Event and the termination or end to the Force Majeure Event; or (i) six (6) months from the date of any Force Majeure Event (collectively the "Force Majeure Tolling Period"). Upon the expiration of any Force Majeure Tolling Period, the Maturity Date shall be extended for a period of time equal to the Force Majeure Tolling Period.
      iv. Mitigation. Borrower shall at all times take all reasonable steps within its power and consistent with industry practices (but without incurring unreasonable additional costs) to: (a) prevent Force Majeure Events affecting the performance of Borrower's obligations under this

3

Agreement; (b) mitigate the effect of any Force Majeure Event; and (c) comply with its obligations under this Agreement. The parties shall consult together in relation to the above matters following the occurrence of a Force Majeure Event.

12. *Waiver.* No waiver by Ricatto of any default shall operate as a waiver of any other default or of the same default on a future occasion.

13. *Time.* Time is of essence hereof.

14. *Assignment.* The terms hereof shall be binding upon and shall inure to the benefit of the parties hereto and their personal representatives, successors and assigns, provided, however, that Borrower may not assign its rights or delegate its duties and obligations hereunder without the prior written consent of Ricatto.

15. *Notices.* Any notice required or permitted to be given hereunder shall be in writing and will be deemed received (a) upon personal delivery or upon confirmed transmission by email, with confirmation of receipt to be provided within twenty four (24) hours (b) on the first business day after receipted delivery to a courier service which confirms next-business-day delivery, or (c) on the third business day after mailing, by registered or certified United States mail, postage prepaid, to the appropriate party at its address set forth below:

If to RICATTO:     Michael Ricatto
260 Madison Ave, 5th Floor
New York, NY 10006
Email:

If to BORROWER:     M3 Innovations Unlimited, Inc.
4 Edgewood Drive
Summit, NJ 07901
Email: mike@m3biodynamics.com

With a copy to:     Daniel Seidenstein, Esq.
Jan Ira Gellis, PC
137 5th Ave
New York, NY 10010
Email: danseidenstein@gelmel.com

16. *Amendments.* No amendment, modification or termination of any provisions of this Agreement shall in any event be effective unless the same shall be in writing and signed by all parties hereto.

17. *Survival of Representations and Warranties.* All agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement and continue in full force and effect until the obligations of Borrower hereunder evidenced by the Note have been fully paid and satisfied.

18. *Entire Agreement; Severability.* This Agreement, together will all Exhibits hereto, constitutes the entire agreement of the parties hereto with respect to the subject matter hereof, and supersedes all prior agreements and understandings. In the event that any clause or provision of this Agreement shall be determined to be invalid, illegal or unenforceable, such clause or provision may

be severed or modified to the extent necessary, and as severed and/or modified, this Agreement shall remain in full force and effect.

19. *Governing Law; Jurisdiction and Venue.* This Agreement and other documents delivered pursuant hereto and the legal relations between the parties shall be governed and construed in accordance with the law of the State of New York. Any dispute or litigation with respect to the representations, warranties, terms and conditions of this Agreement, or any other matter between the parties, shall be litigated in New York and the parties hereby expressly consents to the exclusive jurisdiction and venue in said New York courts.

20. *Counterparts.* This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

M3 INNOVATIONS UNLIMITED, INC.

By: _Michael Zach_
Title: General Counsel, Secretary & Chief Compliance Officer

MICHAEL RICATTO

By: _[signature]_