# Exhibit D

# PROMISSORY NOTE

$ 2,000,000.00

New York, NY
October 11, 2017

    FOR VALUE RECEIVED, the undersigned **M3 INNOVATIONS UNLIMITED, INC.**, a Delaware corporation ("Borrower"), hereby promises to pay to the order of **MICHAEL RICATTO** ("Ricatto"), at 260 Madison Ave, 5th Floor, New York, NY 10006, or at such other place as Ricatto or any subsequent holder hereof (the "Holder") may, from time to time, designate in writing, the principal sum of TWO MILLION DOLLARS ($2,000,000), or so much of that sum as may be advanced under this Note by Ricatto pursuant to the Line of Credit Agreement (defined below), with principal and interest thereon payable as specified in this Note. Capitalized terms used but not defined herein shall have the meanings assigned to such terms in the Line of Credit Agreement.

    1. ***Principal and Interest.***    Interest shall accrue on the Line of Credit from and after the date of disbursement at an annual rate of twelve percent (12%) and three percent (3%) on any amount of the Line of Credit which has yet to be drawn upon (the "Interest Rate"). The Interest Rate and amortized portion of the outstanding principal shall be payable monthly on the third day of each month, beginning on the thirteenth (13th) month following the effective date of this Note and the Line of Credit Agreement. Interest accrued during the first twelve (12) months shall be amortized beginning on the thirteenth (13th) month over the remaining term of the loan. Unless extended by the mutual agreement of the parties, all outstanding principal, accrued but unpaid interest and other outstanding sums due under the Line of Credit Agreement shall be paid in full on the 30th month anniversary of the first (1st) disbursement made under the Line of Credit Agreement (the "Maturity Date"), the entire unpaid principal amount and any interest accrued but unpaid and all other sums due under this Promissory Note ("Note") shall be paid in full to the Holder.

All payments under this Note shall be made only in lawful money of the United States of America, at such place as the Holder hereof may designate in writing from time to time.

    2. **Revolving Loan.**    Up to Two Million Dollars ($2,000,000.00) of the principal amount of this Note may be disbursed, repaid and reborrowed in accordance with the terms of the Line of Credit Agreement, provided that the aggregate of such advances at any time does not exceed $2,000,000.00.

    3. **Prepayment**.    This Note may be prepaid in part (or in full) at any time prior to the Maturity Date (except as expressly provided herein), and from time to time, without premium or penalty, and without the prior consent of the Holder hereof, on the conditions that (a) Borrower shall concurrently pay all accrued but unpaid interest on the amount of principal outstanding at the time of each prepayment, and that (b) Borrower shall provide Holder with five (5) days' prior written notice ("Prepayment Notice") of the amount of the prepayment. In the event Borrower prepays the principle and interest prior to the Maturity Date, Borrower may elect at its sole discretion to terminate the line of credit.

    4. **Default and Acceleration**.    Time is of the essence in the performance of Borrower's obligations pursuant to this Note. Upon the occurrence of a Default as defined in the Line of Credit Agreement, at the option of the Holder hereof, (i) the entire outstanding principal balance, all accrued but unpaid interest at once shall become due and payable upon written notice to Borrower, and (ii) the Holder may pursue all other rights and remedies available under this Note, any instrument securing payment of this Note, or by law.  Upon any Default, Ricatto shall be entitled to recover any and all of its costs of collection, including reasonable attorney's fees.

**5. Default Rate of Interest.**    Upon the occurrence of a Default, Borrower promises to pay interest on the outstanding principal balance of this Note, together with all accrued but unpaid, interest at a rate of interest equal to the lesser of (i) sixteen percent (16%) per annum; or (ii) the maximum allowable and applicable New York State statutory usury rate ("Default Rate").

**6. Discharge**.    Upon payment at the Maturity Date or if Borrower elects, upon early prepayment of this Note in full pursuant to clause 3, this Note, shall be fully discharged and the Note shall be cancelled and surrendered to Borrower.

**7.    Remedies Cumulative**.    The rights or remedies of the Holder as provided in this Note shall be cumulative and concurrent and may be pursued at the sole discretion of the Holder singly, successively, or together against Borrower. The failure to exercise any such right or remedy shall in no event be construed as a waiver or release of such rights or remedies or the right to exercise them at any later time.

**8.    Forbearance**.    Any forbearance of the Holder in exercising any right or remedy hereunder or under the Line of Credit Agreement, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any right or remedy. The acceptance by the Holder of payment of any sum payable hereunder after the due date of such payment shall not be a waiver of the Holder's right to either require prompt payment when due of all other sums payable hereunder or to declare a Default for failure to make prompt payment. No delay or omission on the part of the Holder in exercising any right hereunder shall operate as a waiver of such right or of any other right under this Note.

**9.    Usury**.    In the event the interest provisions hereof, any exactions provided for herein or in the Line of Credit Agreement, shall result, in an effective rate of interest which, exceeds the limit of the usury laws or any other applicable law, all sums in excess of those lawfully collectible as interest for the period in question shall, without further agreement or notice between or by any party hereto, be applied upon the outstanding principal balance of this Note immediately upon receipt of such moneys by the Holder, and any such amount in excess of such outstanding principal balance shall be returned to Borrower.

**10.    Line of Credit Agreement**.    This Note is executed by Borrower in connection with that certain Line of Credit Agreement between Borrower and Ricatto of even date herewith (the "Line of Credit Agreement") and this Note is secured by the Collateral described in the Line of Credit Agreement. In the event of any conflict between any provision of the Line of Credit Agreement and any provisions of this Note, the provision of the Line of Credit Agreement shall control.

**11.    Jurisdiction**.    This Note is to be governed according to the laws of the State of New York, without giving effect to conflict of law principles. Any dispute or litigation with respect to the representations, warranties, terms and conditions of this Agreement, or any other matter between the parties, shall be litigated in New York and the parties hereby expressly consents to the exclusive jurisdiction and venue in said New York courts

**12.  Force Majeure:**
   a.  Definition. Force Majeure Events are those risks beyond the reasonable control of a party, incurred not as a product or result of the negligence of the afflicted party, which have a materially adverse effect on the ability of such party to perform its obligations. Force Majeure Events include but are not limited to earthquakes, floods, fire, plague, drought, crop failure, explosions and other natural disasters; terrorism or threats of terrorism, riots or civil disturbances; war and hostilities, whether declared or not; strikes,

      change of law or regulation, nuclear or chemical contamination, pressure waves from devices travelling at supersonic speeds, and failure of public infrastructure.

  b. Consequences of a Force Majeure Event.

    i. Liability. Except as otherwise provided for in this Section 12, either party's time to perform its obligations under this Note shall be tolled and extended through the Force Majeure Tolling Period (as such term is defined herein), and during the Force Majeure Tolling Period neither party shall incur any liability to the other party for any losses or damages of any nature whatsoever incurred or suffered by the other party or be in default under this Note, if and to the extent that it is prevented from carrying out those obligations by, or such losses or damages are caused by, a Force Majeure Event except to the extent that the relevant breach of its obligations would have occurred, or the relevant losses or damages would have arisen, even if the Force Majeure Event had not occurred. Notwithstanding the foregoing, interest in such amounts as provided for herein and in the Note, shall continue to accrue against all outstanding principal amounts and any amount of the Line of Credit which have yet to be drawn upon, during such Force Majeure Event, provided however that no default rate interests shall be imposed.

    ii. Notice. Within five (5) business days following the date of commencement of a Force Majeure Event, and within five (5) business days following the date of termination of a Force Majeure Event, any party invoking it shall submit to the other party reasonable proof of the nature of the Force Majeure Event and of its effect upon the performance of the party's obligations under this Agreement.

    iii. Timing. Notwithstanding anything to the contrary contained in this Section 12, the tolling of liability and protections against breaches of obligations as provided in Section 11(b)(i) above shall extend for the shorter of (i) the time period between the date of commencement of a Force Majeure Event and the termination or end to the Force Majeure Event; or (i) six (6) months from the date of any Force Majeure Event (collectively the "Force Majeure Tolling Period"). Upon the expiration of any Force Majeure Tolling Period, the Maturity Date shall be extended for a period of time equal to the Force Majeure Tolling Period.

    iv. Mitigation. Borrower shall at all times take all reasonable steps within its power and consistent with industry practices (but without incurring unreasonable additional costs) to: (a) prevent Force Majeure Events affecting the performance of Borrower's obligations under this Agreement; (b) mitigate the effect of any Force Majeure Event; and (c) comply with its obligations under this Agreement. The parties shall consult together in relation to the above matters following the occurrence of a Force Majeure Event.

**13. Binding Effect**. This Note shall be binding upon Borrower, and its successors and assigns and shall inure to the benefit of the Holder and its successors and assigns.

**14. Notice**.    All notices required or permitted in connection with this Note shall be given at the place and in the manner provided in the Line of Credit Agreement for the giving of notices.

IN WITNESS WHEREOF, Borrower has duly executed this Promissory Note effective as of the day and year first above written.

BORROWER:

M3 INNOVATIONS UNLIMITED, INC.
A DELAWARE CORPORATION

By: F. michael Zacharo
Title: General Counsel, Secretary +
Chief Compliance officer