**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MICHAEL RICATTO,

      Plaintiff,

        - v -

M3 INNOVATIONS UNLIMITED INC.,
KYLE KIETRYS,
JOHN DOES 1-10, and
JANE DOES 1-10,

      Defendants.

No. 18 CV 8404 (KPF)

**[CORRECTED] MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Wesley M. Mullen (WM1212)
MULLEN P.C.
200 Park Avenue | Suite 1700
New York, NY 10166
(646) 632-3718
wmullen@mullenpc.com

*Counsel for Defendants*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................... 1

BACKGROUND .......................................................................... 2

    **I.**    **THE PARTIES' AGREEMENTS** ............................................ 2

        A.    The MOU ...................................................... 2

        B.    The Definitive Agreements ............................. 2

            1.    The LOC

            2.    The Promissory Note

            3.    The Lease

    **II.**    **THE PLEADINGS** .............................................................. 5

        A.    Plaintiff's Claims ............................................ 5

        B.    M3's Counterclaim ......................................... 6

    **III.**    **PROCEDURAL HISTORY** ................................................. 8

LEGAL STANDARDS ................................................................ 9

ARGUMENT .............................................................................. 11

    **I.**    **JUDGMENT MAY ENTER AGAINST
PLAINTIFF'S CONTRACT CLAIMS** .................................. 11

        A.    Kietrys is Not a Party to Any Contract ............ 12

        B.    The MOU is Unenforceable ............................. 12

        C.    The Complaint Alleges No Breach .................. 13

        D.    Plaintiff Did Not Perform ............................... 15

        E.    The Repudiation Claim
Fails as a Matter of Law ................................. 16

    **II.**    **JUDGMENT MAY ENTER AGAINST
PLAINTIFF'S FRAUD CLAIM** ......................................... 19

        A.    The Fraud Claim is Duplicative
of The Contract Claims ................................... 19

        B.    Rule 9(b) Requires Particularity ..................... 21

        C.    Threadbare Veil-Piercing Allegations
Fail to State a Claim ...................................... 23

    **III.**    **JUDGMENT MAY ENTER FOR M3
ON ITS CONTRACT COUNTERCLAIM** .............................. 23

CONCLUSION .......................................................................... 24

## TABLE OF DOCUMENTS INCORPORATED IN THE PLEADINGS

**Document**                                                                                        **ECF No.**

Complaint ............................................................................................................... 26

Answer with Counterclaims.................................................................................. 32

The MOU.............................................................................................................. 26-2

The Definitive Agreements

    The LOC ........................................................................................................ 26-3

    The Promissory Note...................................................................................... 26-4

    The Lease........................................................................................................ 26-5

M3's Request for Funds under the LOC (April 26, 2018) ...................................... 32-5

Ricatto's Rejection Letter (April 30, 2018)............................................................ 32-6

## TABLE OF AUTHORITIES

### Cases

*28th Highline Assocs., LLC v. Roache*,
    No. 18 Civ. 1468,
    2019 U.S. Dist. LEXIS 30057,
    (S.D.N.Y. Feb. 25, 2019) ..................................................................................16, 18

*Altman v. J.C. Christensen & Assocs, Inc.*,
    786 F.3d 191 (2d Cir. 2015).................................................................................. 2, 10

*Applied Energetics, Inc. v. NewOak Capital
    Markets, LLC*, 645 F.3d 522 (2d Cir. 2011)..................................................... 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2008)................................................................... 17

*A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*,
    241 F. Supp. 31 461 (S.D.N.Y. 2017).............................................................. 23

*Bayerische Landesbank, N.Y. Branch v.
    Aladdin Capital Mgmt. LLC*,
    692 F.3d 42 (2d Cir. 2012)................................................................................. 19

*Berman v. Morgan Keegan & Co.*,
    455 Fed. Appx. 92 (2d Cir. 2012)....................................................................... 21

*Bridgestone/Firestone v. Recovery Credit Servs.*,
    98 F.3d 13, 19 (2d Cir. 1996).............................................................................19, 20

*Brown v. Cara*, 420 F.3d 148 (2d Cir. 2005).......................................................... 12

*Calvary Constr., Inc. v. WDF, Inc.*,
    428 B.R. 25 (S.D.N.Y. 2010)............................................................................ 12

*Chatsworth Realty 344 LLC v. Hudson Waterfront Co.*,
    No. 109992/02, 2003 N.Y. Misc. LEXIS 166
    (N.Y. Sup. Ct. Mar. 4, 2003) ........................................................ 16

*DiFolco v. MSNBC Cable L.L.C.*,
    831 F. Supp. 2d 634 (S.D.N.Y. 2011) ........................................... 18

*Doller v. Prescott*, 167 A.D.3d 1298
    (App. Div. 3d Dep't 2018) .............................................................. 12

*Greenfield v. Philles Records, Inc.*,
    98 N.Y.2d 562 (2002) ...................................................................... 11

*Harries v. Stark*, No. 15-cv-5917 (PKC),
    2018 U.S. Dist. LEXIS 56119,
    (S.D.N.Y. Mar. 30, 2018) ............................................................... 19

*Hayden v. Paterson*, 594 F.3d 150 (2d Cir. 2010) ............................... 10

*Johnson v. Nextel Commc'ns, Inc.*,
    660 F.3d 131 (2d Cir. 2011) ........................................................... 11

*Jos. Martin, Jr. Delicatessen, Inc. v. Schumacher*,
    52 N.Y.2d 105 (1981) ...................................................................... 12

*Kass v. Kass*, 91 N.Y.2d 554 (1998) .................................................... 10

*Kim v. Kimm*, 884 F.3d 98 (2d Cir. 2018) ............................................... 9

*L-7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011) ....................................................... 9, 10

*Law Debenture Trust Co. v. Maverick Tube Corp.*,
    595 F.3d 458 (2d Cir. 2010) ........................................................... 11

*Lawson v. Affirmative Equities Co., L.P.*,
    341 F. Supp. 2d 51 (D. Ma. 2004) ................................................. 16

*Lerner v. Fleet Bank N.A.*, 459 F.3d 273
    (2d Cir. 2006) .................................................................................. 21

*LiveIntent, Inc. v. Naples*,
    293 F. Supp. 3d 433 (S.D.N.Y. 2018) ........................................... 20

*Magee v. Paul Revere Life Ins. Co.*,
    954 F. Supp. 582 (E.D.N.Y. 1997) ................................................ 16

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
    500 F.3d 171 (2d Cir. 2007) ...................................................... 15, 19

*Murray Eng'g P.C. v. Remke*, 17 Civ. 6267 (KPF),
    2018 U.S. Dist. LEXIS 134404,
    (S.D.N.Y. Aug. 9, 2018) ................................................................. 21

*Nat'l Gear & Piston, Inc. v. Cummins Power
    Sys., LLC*, 975 F. Supp. 2d 392
    (S.D.N.Y. 2013) .............................................................................. 23

*Provident Loan Soc'y of N.Y. v. 190 E. 72nd St. Corp.*,
    78 A.D.3d 501 (1st Dep't 2010) ..................................................... 11

*Ramchair v. Conway*, 601 F.3d 66 (2d Cir. 2010) ............................................................9

*Record Club of Am., Inc. v. United Artists
Records, Inc.*, 890 F.2d 1264 (2d Cir. 1989).......................................18

*Ritani, LLC v. Aghjayan*, 970 F. Supp. 2d 232
(S.D.N.Y. 2013) ...........................................................................22

*Romar v. Alli*, 120 A.D.2d 420 (1st Dep't 1986) ...........................................16

*Stuart Leventhal, Fzus, Inc. v. Franzus Co.*,
No. 88 Civ. 3546 (MBM),
1988 U.S. Dist. LEXIS 13651,
(S.D.N.Y. Dec. 5, 1988)..................................................................16

*Telecom Int'l Am. Ltd. v. AT&T Corp.*,
280 F.3d 175 (2d Cir. 2001)........................................................19, 20, 21

*In re Trusteeships Created by Tropic CDO I Ltd.*,
92 F. Supp. 3d 163 (S.D.N.Y. 2015) ...........................................10, 15

*In re Trusts Established Under the Pooling &
Servicing Agreements relating to the
Wachovia Bank*, No. 17 Civ. 1998 (KPF),
2018 U.S. Dist. LEXIS 39148,
(S.D.N.Y. March 9, 2018)................................................................ 10

*U.S. Capital Partners, LLC v. Stanwich
Capital Advisors, LLC*, No. 14 Civ. 4138 (KPF),
2015 U.S. Dist. LEXIS 93680,
(S.D.N.Y. July 17, 2015)..................................................................21, 22

## Statutes and Rules

Fed. R. Civ. P. 9 ............................................................................................21, 22

Fed. R. Civ. P. 12............................................................................................ passim

## Other Authorities

Restatement (Second) of Contracts............................................................................ 18

Defendant-Counterclaim Plaintiff M3 Innovations Unlimited, Inc. ("M3") and Defendant Kyle Kietrys (M3 and Kietrys, together, "Defendants") respectfully submit this memorandum of law in support of their motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  Both defendants seek judgment against Plaintiff on all claims in the Amended Complaint (the "Complaint" (cited as "Compl.")) (ECF Doc. 26).  M3 seeks judgment in its favor on its contract counterclaim.

## PRELIMINARY STATEMENT

Defendant M3 is a medical marijuana company and Defendant Kietrys is its CEO. Plaintiff Michael Ricatto agreed to lend M3 up to $2 million under a Line of Credit Agreement (the "LOC") dated October 11, 2017.  Ricatto lent M3 $800,000 in the first 6 months.

In April 2018, M3 asked Ricatto for another $200,000 under the LOC.  Ricatto said no.  His rejection letter claimed that M3 "may be insolvent," and therefore in default.

But the LOC is unambiguous.  Only a *written* declaration of insolvency triggers an event of default; Ricatto admitted there was none.  Ricatto thus breached the LOC when he refused to lend.  And he doubled down on his breach by bringing this lawsuit.

The contracts in the Complaint are crystal-clear.  Judgment is appropriate on the breach of contract claim because the MOU is unenforceable and because the Complaint alleges no breach of any other agreement.  New York law bars the claim for anticipatory repudiation.  The fraud claim is both duplicative of the contract count, and inadequately pleaded.

## BACKGROUND

### I.   THE PARTIES' AGREEMENTS

As alleged,[1] Ricatto met M3 in 2017.  (Compl. ¶ 13.)  Together, Ricatto and M3 developed a plan to buy property and develop a "facility" in California "for the cultivation and processing of cannabis" under California's medical marijuana law.  (*Id.*)

### A.   The MOU

On September 2, 2017, Ricatto and M3 executed a Memorandum of Understanding ("MOU") regarding a "potential partnership."  (*Id.* ¶¶ 13, 14; *id.* Ex. B (MOU).)  Under the MOU, the parties agreed to "use reasonable efforts to enter into and finalize a Partnership Agreement" by September 24, 2017.  (MOU § 1(a).)

By its terms, the MOU was "not a binding obligation on the parties to enter a Partnership Agreement."  (MOU § 1(c).)  Ricatto and M3 agreed that "neither party shall be finally bound unless and until [a] Partnership Agreement is executed … ."  (*Id.*)

### B.   The Definitive Agreements

Ricatto and M3 never entered a partnership agreement as contemplated by the MOU. Instead, in October 2017, they entered a Line of Credit Agreement ("LOC"), (Compl. Ex. C); a Promissory Note, (*id.* Ex. D); and a Lease, (*id.* Ex. E).

#### 1.   The LOC

Under the LOC, Ricatto agrees to lend M3 up to $2 million.  (LOC (Compl. Ex. C) at page 1 ("Recitals").)  The loan is a "revolving line of credit."  (*Id.* § 1.)  The negotiated terms of the LOC reflect a risky loan to an early-stage company.

---

[1] This statement of facts is drawn from the Complaint.  Defendants do not admit Plaintiff's allegations, but they accept them as true solely for the purposes of this Rule 12(c) motion.  *E.g.*, *Altman v. J.C. Christensen & Assocs, Inc.*, 786 F.3d 191, 193 (2d Cir. 2015).

The interest rate is high. Ricatto earns 3% annual interest on even the <u>undrawn</u> portion of the $2 million LOC: a minimum of $60,000 per year. (*Id.*) He earns 12% annual interest on any drawn portion. (*Id.* § 1.) M3 is to start paying principal and interest after the first 12 months. (*Id.*)

Ricatto must advance funds when M3 gives him "three (3) business days' advance written notice" that "set[s] forth the amount of the advance." (*Id.* § 2.) Under two circumstances, however, Ricatto "shall have no obligation to make a disbursement." One, Ricatto can refuse to lend if the requested amount "would exceed the [a]mount" of $2 million. (*Id.* § 1.) And two, he can refuse "if there is an Event of Default" by M3. (*Id.*)

Events of Default are carefully defined at Section 5 of the LOC. As relevant to the defaults alleged in the Complaint, a default occurs if M3 "admits *in writing* its inability to pay its debts as they become due" or "files a petition under" the Bankruptcy Code. (*Id.* §§ 5(c)(i), (ii) (emphasis added).) To declare an Event of Default, Ricatto must "notify [M3] in writing." (*Id.* § 5.) M3 then has 30 days to cure. (*Id.*) If it does not, M3 "shall be deemed to be in default … ." (*Id.*)

The LOC contains a merger clause and supersedes all prior agreements, including the MOU. (*Id.* § 18.) The LOC is governed by New York law. (*Id.* § 19.)

## 2.    The Promissory Note

The LOC is secured by a Promissory Note, (Compl. Ex. D (Promissory Note); *see* LOC § 3), under which M3 agrees to pay Ricatto "the principal sum of TWO MILLION DOLLARS ($2,000,000) or so much of that sum as may be advanced … pursuant to the Line of Credit Agreement … ." (Promissory Note at Page 1 (Preamble).) The Promissory Note

"contain[s] the same material terms as the LOC."  (Compl. ¶ 20.)  Ricatto and M3 executed

the note "in connection with" the LOC.  (Promissory Note § 10.)

The Promissory Note does not define events of default.  Instead it incorporates the

LOC.  Default under the Promissory Note happens "[u]pon the occurrence of a Default as

defined in the Line of Credit Agreement."  (*Id.* § 4.)  Like the LOC, the Promissory Note is

governed by New York law.  (*Id.* § 11.)

### 3.    The Lease

Ricatto and M3 also entered a Lease.  (Compl. ¶ 21; *id.* Ex. E (Lease).)  Ricatto owns

land in the city of Adelanto, California.  (Lease at Page 1 (Preamble ¶ A.))  Ricatto designates

Golden State Lion LLC, a "limited liability company[] of which [Ricatto] is the sole member"

as landlord under the Lease.  (*Id.*)  Golden State Lion LLC leases the premises to M3, as

tenant.  (*Id.* at Preamble ¶ B.)  M3 may use the premises for any lawful purpose, including the

cultivation and processing of cannabis.  (*Id.* § 1.2.)

The Lease provides that "Ricatto or his designee" shall "purchas[e], construct[], and

install[]" a greenhouse on the premises, "such that the City of Adelanto will issue a certificate

of occupancy for the Greenhouse."  (Lease at Page 1 (Preamble ¶ A.))  That certificate is

important:  M3 pays no rent until one year *after* Ricatto obtains a certificate of occupancy for

the greenhouse.  (*Id.* § 2.1)

M3 must reimburse Ricatto for 25% of the cost of the greenhouse.  (*Id.* § 1.8(a).)

Ricatto pays the other 75%.  (*Id.*)

The Lease contains a merger clause that supersedes all prior agreements, including the

MOU.  (*Id.* § 16.12.)  Being a contract related to real property in the State of California, the

Lease is governed by California law.  (*Id.* §§ 1.1 & 16.9.)

## II.   THE PLEADINGS

### A.   Plaintiff's Claims

The Complaint asserts three claims against M3 and Kietrys:  (1) Anticipatory Repudiation of Contract; (2) Breach of Contract; and (3) Fraud in the Inducement.

### 1.   Anticipatory Repudiation

Count I asserts that Defendants repudiated the LOC and the Promissory Note "by "indicat[ing] to Ricatto unequivocally and repeatedly that … M3 currently has no money left and is insolvent." (Complaint ⁋ 43.)  The LOC expressly requires that admission to be in writing to constitute default.  (LOC § 5.)  THe Compliant pleads no writing.  Nevertheless, the Complaint claims that M3's conduct "absolved" Ricatto of his "obligations of future performance" under the LOC.  (*Id.* ⁋ 41.)  It seeks a declaration that "the LOC is terminated," and that Ricatto had no obligation to lend.  (*Id.* at Page 13 (Prayer for Relief ⁋ (c).)

### 2.   Breach of Contract

Count II for Breach of Contract claims that Defendants breached the agreements by "failing to use funds that Ricatto provided under the LOC exclusively for business purposes." (*Id.* ⁋ 48.)  Though the LOC contains no restriction on M3's use of loaned funds, Plaintiff seeks contract damages and attorney fees.  (*Id.* ⁋ 52 & Page 11 (Wherefore clause).)  Here, too, the Complaint claims that Ricatto's refusal to lend is excused.

### 3.   Fraud In the Inducement

Count III, for Fraud, alleges that "by entering into the MOU, LOC and Promissory Note," the defendants made two misrepresentations:

    a.   Defendants allegedly "represented to Ricatto that they would [] use funds loaned from Ricatto under the LOC to develop the Property for use for the cultivation and processing of cannabis … ." (*Id.* ⁋ 54.)

      b.   Defendants allegedly "represented to Ricatto that they would …
be in a financial position by October 11, 2018 to make payments
to Ricatto representing interest and the amortized portion of the
outstanding principal balance." (*Id.*)

Neither representation appears in any of the parties' agreements.  The Complaint identifies

no specific false statement.  And it attributes nothing to Kietrys personally; instead, the

Complaint claims Kietrys is liable under a veil-piercing theory. (*Id.* ⁋ 60.)

### B.    M3's Counterclaim

M3 counterclaims for Breach of Contract.[2] (Ans. ⁋⁋ 83-89.)  M3 alleges that Ricatto

breached the LOC when he rejected without justification M3's April 26, 2018 request for an

advance of $200,000.  (*Id.* ⁋⁋ 86-87, 89.)

Ricatto loaned M3 $800,000 between October 2017 and April 2018.  (*Id.* ⁋ 59;

Compl. ⁋ 23.)  On April 26, 2018, M3 sought another $200,000 pursuant to Section 2 of the

LOC.  (Ans. ⁋⁋ 58, 60 & Ex. E.)

Ricatto rejected the request.  (*Id.* ⁋ 61.)  In a letter from counsel (the "Rejection

Letter"), Ricatto informed M3 of his position that:

> pursuant to the MOU, the parties agreed that funds from the
> LOC could only be used for "Business Expenses."  As you are
> well aware, a business expense must be considered both ordinary
> and necessary.  An ordinary expense is one that is common and
> accepted in the business and a necessary expense is one that is
> helpful and appropriate for the business.  These expenses are of
> course distinguished from a "Capital Expense" which are funds
> spend to acquire or improve a long-term asset such as a
> Greenhouse.

---

[2] M3 also asserts counterclaims for Breach of the Implied Covenant of Good Faith and Fair Dealing (Ans. ⁋⁋
90-96); Promissory Estoppel (*id.* ⁋⁋ 97-102); Intentional Interference (*id.* ⁋⁋ 103-113); and Unjust Enrichment
(*id.* ⁋⁋ 114-122).  M3 does not now seek judgment on the pleadings as to those counterclaims.

(*Id.* Ex. F at 1.)  According to the novel logic of the Rejection Letter, "[p]ayment of M3's portion of the Greenhouse constitutes a 'Capital Expense', and is therefore a prohibited use of the LOC funds."  (*Id.*)

M3 did not agree with the Rejection Letter's bogus interpretation of the parties' agreements.  For one thing, by April 30, 2018, the MOU cited in the Rejection Letter had been superseded by the definitive LOC.  For another, nothing in the LOC restricted M3's use of loaned funds.  And Ricatto's counsel seems to have borrowed the tax-and-accounting distinction between "Operating Expenses" and "Capital Expenses" and applied it, creatively, to the term "Business Expenses" in the MOU.

In the Rejection Letter, Ricatto also wrote that "M3's failure to provide their [sic] own funds to contribute toward the Greenhouse leads us to believe that M3 may be insolvent … ." (*Id.* ¶ 64 & Ex. E.)  He therefore demanded "access to review M3's books and records" to bolster his "belief."  (*Id.* Ex. E.)  Of course, Ricatto's written admission that M3 "may be insolvent" at the time he rejected M3's funding request on April 30, 2018 firmly puts the lie to his later, self-serving allegation that "in or about April 2018," (*Id.* ¶ 28), "Defendants … indicated to Ricatto unequivocally and repeatedly that … M3 currently has no money left and is insolvent," (*id.* ¶ 43).

Between April and September 2018, parties and counsel attempted to resolve their differences.  M3 steadfastly contended that Ricatto breached by refusing to lend, and demanded that he advance funds as required under the LOC.  Ricatto, for his part, mischaracterized M3's simple demand that Ricatto perform as further proof of M3's "lack of money/insolvency."  (*See id.* ¶ 36.)

M3 was reluctant to disclose its business records.  Nothing in the parties' agreements required it, and M3 suspected that Ricatto desired a pretext for his breach.  Yet in an attempt at reconciliation, on August 22, 2018, M3's counsel disclosed "select financial information" to Ricatto.  (Compl. ¶ 32.)  Plaintiff quickly repackaged that information into a Complaint and filed suit on September 14.  (*See* Compl. ¶¶ 33-34 (alleging that "[t]he information that M3 provided raised more concerns regarding the partnership between the parties").)

## III.  PROCEDURAL HISTORY

Plaintiff filed this action on September 14, 2018.  (ECF Doc. 1.)  Defendants answered on November 30, 2018.  (ECF Doc. 10.)  The same day, Defendants requested a pre-motion conference in anticipation of this proposed motion.  (ECF Doc. 11.)  Plaintiff opposed.  (ECF Doc. 12.)

The Court held a conference on December 18, 2018.  (*See* 12/18/18 Hr'g Tr. (Mullen Decl. Ex. A).)  At the conference, counsel for Plaintiff conceded that the loan documents do not restrict M3's use of borrowed funds.  (*Id.* 8:6-13.)  Counsel also conceded that M3 never admitted in writing an inability to pay debts as they became due.  (*Id.* 6:13-17 ("I don't recall anything in writing, [Y]our [H]onor"); *id.* 7:5-13.)  Instead, Plaintiff's counsel declared for the first time that – though the allegation appears nowhere in Plaintiff's pleading – an unnamed M3 lawyer had told him "that [M3 was] broke, that they didn't have any money, that they had spent the $800,000."  (*Id.* at 4:15-19.)

The Court pressed for specifics:

> THE COURT:  **Let me please stop you because these are very serious allegations that you are making,** and I want to know precisely what counsel for the defendants told you because I'm looking at the promissory note now.  I'm looking in particular at the events of default, and I want to make sure I understand exactly what you were told … .

(*Id.* at 4:20-5:1 (emphasis added).)[3]

Since allegations not in the pleadings cannot overcome a Rule 12(c) motion, the Court offered Plaintiff the opportunity to amend.  (*Id.* at 14:3-9.)  He accepted the invitation, filing the operative Complaint on January 7, 2019.  Yet despite counsel's representations during the pre-motion conference, the new Complaint alleges no specific statement by M3 (or any of its lawyers) that plausibly supports the conclusion that M3 was insolvent.  (*See* Mullen Decl. Ex. B (blackline comparing ECF Doc. 1 with Complaint (ECF Doc. 26).)  And, of course, the Complaint still nowhere alleges that M3 admitted in writing its inability to pay debts as they became due.

Instead, the Complaint sticks with the same vague allegation that "Defendants have indicated to Ricatto unequivocally and repeatedly that despite the substantial amount of money M3 has received from Ricatto and the lack of development of the Property, M3 currently has no money left and is insolvent."  (Compl. ¶ 43; *compare* ECF Doc. 1 ¶ 37 (same).)

Defendants now move for judgment on the pleadings.

## LEGAL STANDARDS

"On a [Rule] 12(c) motion; the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

---

[3] In light of Plaintiff's representations, M3 may seek to disqualify Plaintiff's counsel under the advocate-witness rule if the contract claims proceed to discovery and trial.  "It is well established that once representation is undertaken, a lawyer must withdraw as advocate if it appears that he must testify on behalf of his own client." *Ramchair v. Conway*, 601 F.3d 66, 74 (2d Cir. 2010); *see Kim v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018) ("The advocate-witness rule applies, first and foremost, where the attorney representing the client before a jury seeks to serve as a fact witness in that very proceeding.") (citation and emphasis omitted).

The standard under Rule 12(c) is the same as under Rule 12(b)(6). *Altman v. J.C. Christensen & Assocs, Inc.*, 786 F.3d 191, 193 (2d Cir. 2015). The Court must "draw all reasonable inferences in the non-movant's favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *In re Trusts Established Under the Pooling & Servicing Agreements relating to the Wachovia Bank*, No. 17 Civ. 1998 (KPF), 2018 U.S. Dist. LEXIS 39148, at \*15 (S.D.N.Y. March 9, 2018) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough. *L-7 Designs*, 647 F.3d at 430 (citation omitted).

Allegations must be "well-pleaded" to merit consideration. Those "that … are no more than conclusions[] are not entitled to the assumption of truth." *Hayden v. Paterson*, 594 F.3d 150, 160-161 (2d Cir. 2010) (citation omitted). The same goes for allegations that are contradicted by documents. "If the allegations of a pleading are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations … ." *In re Trusteeships Created by Tropic CDO I Ltd.*, 92 F. Supp. 3d 163, 171 (S.D.N.Y. 2015) (citation and quotation omitted).

For these reasons, "[m]otions for judgment on the pleadings are particularly appropriate in breach of contract cases involving legal interpretations of the obligations of the parties." *Wachovia Bank*, 2018 U.S. Dist. LEXIS 39148, at \*16 (citations omitted).

\*     \*     \*

The MOU, LOC, and Promissory Note are all governed by New York law.[4]  "[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms."  *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002) (quotations and citations omitted).

Construction of an unambiguous contract is a question of law for the Court.  *Provident Loan Soc'y of N.Y. v. 190 E. 72nd St. Corp.*, 78 A.D.3d 501, 502 (1st Dep't 2010).  A contract is not ambiguous simply because the parties construe it differently.  *Law Debenture Trust Co. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) ("Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation[.]") (citations omitted).  Rather, "when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms."  *Kass v. Kass*, 91 N.Y.2d 554, 566 (1998).

## ARGUMENT

### I.   JUDGMENT MAY ENTER AGAINST PLAINTIFF'S CONTRACT CLAIMS

Under New York law, the elements of a breach of contract claim are (1) the existence of a contract between the parties; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages.  *See Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011).

Plaintiff alleges no contract with Kietrys.  The MOU is unenforceable;  the Complaint pleads no actionable breach of any other agreement.  And Plaintiff's anticipatory repudiation

---

[4] The Complaint also attaches a Lease, (Compl. Ex. E), but it does not allege that any Defendant breached it. (*See* Complaint ¶¶ 37-52; 12/18/18 Hr'g Tr. at 3:22-4:1 ("THE COURT:  Your complaint, as it currently stands, does not suggest that there is any breach of the lease, or does it?  [PLAINTIFF'S COUNSEL:]  I don't recall breaching the sections of the lease.").)

claim fails because (among other reasons) New York law does not allow repudiation claims under agreements for the payment of money only.

### A.    Kietrys is Not a Party to Any Contract

No contract claim will lie against Kietrys because he is not a party to any alleged contract.  "It is hornbook law that a non-signatory to a contract cannot be named ... in a breach of contract action ... ."  *Calvary Constr., Inc. v. WDF, Inc.*, 428 B.R. 25, 30 (S.D.N.Y. 2010) (citation and quotation omitted).  Each of the MOU, LOC and Promissory Note is between Ricatto and M3.  (MOU at Page 3; LOC at Page 5; Promissory Note at Pages 1, 5.)  Kietrys is not a party to any of them.  Judgment should enter for Kietrys on Counts I and II.

### B.    The MOU is Unenforceable

"An agreement to agree, in which a material term is left for future negotiations, is unenforceable."  *E.g., Doller v. Prescott*, 167 A.D.3d 1298, 1300 (App. Div. 3d Dep't 2018) (quoting *Jos. Martin, Jr. Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 109 (1981)); *see also Brown v. Cara*, 420 F.3d 148, 153 (2d Cir. 2005) (affirming dismissal of claim for breach of an MOU because "a preliminary agreement does not create a binding contract").

The MOU was an unenforceable agreement to agree by its very terms.  It says:

> It is expressly understood that the terms of this MOU do not constitute a binding obligation on the parties to enter into a Partnership Agreement.  Neither party shall be finally bound unless and until the Partnership Agreement is executed by the parties and delivered to each other.

(MOU § 1(c).)  Ricatto and M3 also reserved the right not to be bound absent the execution of a later agreement.  (*Id.*)  The two never entered a partnership agreement, and the Complaint does not allege one.  Thus the MOU is not binding, and it cannot be the basis for a claim of breach of contract.

More than a month after the MOU, Ricatto and M3 signed the LOC, which unambiguously "constitute[d] the entire agreement of the parties … and supersede[d] all prior agreements and understandings." (LOC § 18 (October 11, 2017).) As a matter of law, Plaintiff cannot prevail on a claim for breach of the MOU.

### C.     The Complaint Alleges No Breach

The Complaint alleges that Defendants breached the MOU and LOC "by failing to use funds that Ricatto provided under the LOC exclusively for business purposes." But the agreements do not say how loaned funds must be used, so the conduct alleged is not a breach. Judgment should enter for the additional reason that – even if the LOC said what Plaintiff claims it does – the Complaint fails plausibly to plead conduct that constitutes a breach.

*First*, nothing in the LOC or the Promissory Note restricts M3's use of funds. (See LOC; Promissory Note.) Plaintiff conceded as much at the pre-motion conference. (12/18/18 Hr'g Tr. at 8:6-10.) The conditions of default, (LOC § 5), are clear and unambiguous. "Misuse" of funds is not one of them. Plus, in order to assert a breach, the LOC required that Ricatto provide written notice to M3. (LOC § 5.) He did not, and does not allege it.

Nor do the contracts limit M3 to expenditures that Ricatto deems valid. (LOC § 5; *cf.* MOU at Appendix A.)[5] Under the interpretation of the LOC espoused in the Complaint, Plaintiff might pull his funding whenever it may "appear" that M3's spending is "for the

---

[5] The MOU states that the LOC "would only be used for  business purposes." (MOU at Appendix A ¶ B.8.) But the MOU was an unenforceable agreement to agree. (*See supra*.) And even if the MOU had once bound the parties, the MOU was merged and superseded in the later LOC, which contains no "business purposes" restriction. "Under New York law, it is well established that a subsequent contract regarding the same matter will supersede the prior contract." *Applied Energetics, Inc. v. NewOak Capital Markets, LLC*, 645 F.3d 522, 526 (2d Cir. 2011) (quotation omitted). If anything, the restriction in the MOU shows that the parties knew how to contract for restrictions on the use of funds, and supports the conclusion that they deliberately omitted any such restriction from the definitive LOC.

benefit of … shareholders" rather than for "advancing the project," as Ricatto would evidently prefer. (Compl. ¶ 34.) However, the LOC does not require that funds be used for "advancing the project." And none of Plaintiff's wishful limitations appears in the unambiguous agreements, which should be enforced according to their clear terms. *Kass*, 91 N.Y.2d at 566.

In sum, the Complaint pleads no breach because the unambiguous LOC does not require that funds be used for "business purposes." Even assuming the alleged expenditures were unwise as a matter of business judgment, nothing in the LOC forbids them – or grants Ricatto a say in M3's day-to-day operations.

*Second*, the Complaint's conclusory allegation that Defendants "misuse[d] … funds," (Compl. ¶ 50), is inconsistent with a cursory review of the supporting allegations of fact. The Complaint lays out a laundry list of expenses that it claims "appear to be for the benefit of the officers, directors and shareholders of M3, as opposed to for the benefit of advancing the project." (Compl. ¶ 34.) Plaintiff's resort to pleading what "appear[s]" is a clue that we are in the realm of conclusion – not fact. The allegations are properly disregarded on a Rule 12 motion.

Even stretching to afford Plaintiff every favorable inference, the Complaint pleads only an unremarkable inventory of ordinary business expenses. (*E.g.*, *id.* ¶¶ 34(i) ($23,342.70 in meals and entertainment); (m) ($37,000 in CFO fees); (o) ($142,448 in legal fees (for a medical marijuana company)).) It objects to M3's payroll, pleading in conclusion and "upon information and belief" that "M3 has not even started" work – as if "starting work" on Ricatto's preferred project is a prerequisite for M3's obligation to pay employee wages. (*Id.* ¶ 34(j).) It calls out M3's legal fees on the ground that there is "no legal work being done that would appear to advance the project." (*Id.* ¶ 34(o).) Yet the Complaint pleads no reason

Ricatto would have knowledge of (privileged) legal advice by M3's lawyers; nor does Ricatto plead facts to show why a medical marijuana company ought not to pay its lawyers.  And it points to a whopping $8,550 "given to Kietrys individually," without even attempting to intimate that reimbursements from a company to its CEO are irregular or improper.  (*Id.* ¶ 34(a).)

These allegations are the just the best Plaintiff can come up with, rifling through M3's books and records in hindsight, in an attempt to justify his own breach.  (*See* Compl. ¶ 32 ("information that M3 provided [in August 2018] raised more concerns … .").)

The assertion that Plaintiff refused to lend because M3 "misuse[d] funds" is also flatly contrary to documentary proof, and therefore properly disregarded on a Rule 12(c) motion. *Tropic CDO I Ltd.*, 92 F. Supp. 3d at 171.  When Ricatto rejected M3's funding request on April 30, 2018, he made no mention of any "misuse of funds."  (Ans. Ex. F.)  The Court need not simply swallow the *post hac* allegation that M3's spending justified Ricatto's refusal to lend.  The Complaint fails to plead the element of breach because it offers no facts to support the conclusion that M3's use of funds was in any way improper.

### D.    Plaintiff Did Not Perform

The second element of a claim for breach of contract is "performance by the plaintiff." *Johnson*, 660 F.3d at 142.  A defendant's "performance under a contract is excused where the [plaintiff] has substantially failed to perform its side of the bargain, or, synonymously, where [plaintiff] has committed a material breach."  *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186 (2d Cir. 2007).

Ricatto did not perform under the LOC and the Promissory Note. It is undisputed that he refused to lend upon M3's valid request.  (Ans. Ex. F (Rejection Letter); *see* Compl. at Page

13 ¶ (c) (seeking a declaration that Ricatto was under no obligation "to further extend his line of credit").)  Judgment should issue on the contract claim because Plaintiff cannot prove the second element.

### E.   The Repudiation Claim Fails
As a Matter of Law

Plaintiff's claim for anticipatory repudiation also fails, for at least four reasons.

*First*, "New York does not permit recovery for the anticipatory repudiation of an executory contract to pay money." *Stuart Leventhal, Fzus, Inc. v. Franzus Co.*, No. 88 Civ. 3546 (MBM), 1988 U.S. Dist. LEXIS 13651, at *11 (S.D.N.Y. Dec. 5, 1988) (citing *Romar v. Alli*, 120 A.D.2d 420, 421 (1st Dep't 1986)); *accord Lawson v. Affirmative Equities Co., L.P.*, 341 F. Supp. 2d 51, 64 (D. Ma. 2004) ("New York does not recognize an action for the anticipatory breach of a contract for the payment of money") *and Magee v. Paul Revere Life Ins. Co.*, 954 F. Supp. 582, 585 (E.D.N.Y. 1997) (granting motion to dismiss claim for anticipatory breach of executory contract to pay money).

The Complaint alleges anticipatory repudiation of the LOC and Promissory Note. Both are executory contracts for the payment of money only.  Both are governed by New York law, (LOC § 19; Promissory Note § 11), which prohibits the claim.

*Second*, there can be no claim for anticipatory repudiation where Plaintiff fails to state an underlying claim for breach of contract.  *28th Highline Assocs., LLC v. Roache*, No. 18 Civ. 1468, 2019 U.S. Dist. LEXIS 30057, at *24-25 (S.D.N.Y. Feb. 25, 2019) (granting motion to dismiss claim for anticipatory breach of contract) (citing *Chatsworth Realty 344 LLC v. Hudson Waterfront Co.,* No. 109992/02, 2003 N.Y. Misc. LEXIS 166, (N.Y. Sup. Ct. Mar. 4, 2003) (Since "the court has found no basis for a claim of breach [of the underlying contract] … this

claim [for anticipatory breach] is found wanting."). Here, like Plaintiff's other contract claim, the Complaint pleads no breach.

The Complaint alleges that Defendants repudiated the LOC and Promissory Note when they "indicated to Ricatto unequivocally and repeatedly that … M3 currently has no money left and is insolvent." (Compl. ¶ 43.)

Default under the LOC or the Promissory Note requires a writing. Specifically, M3 must "admit[] in writing its inability to pay its debts as they become due." (LOC § 5(c).) M3 never made an admission in writing; the Complaint does not allege it; and Plaintiff concedes. (12/18/18 Hr'g Tr. at 6:13-17.)

Moreover, to claim an event of default, Ricatto would have had to "notify [M3] in writing" and allow 30 days to cure. (*Id.* § 5.) Ricatto never gave notice of default, and again, the Complaint does not allege it. The default provisions are unambiguous. The breach inquiry should end there.

Even if it did not, the Complaint's irresponsibly vague and conclusory allegation is not be entitled to a presumption of truth. Though the Court pressed Plaintiff to clarify M3's alleged "unambiguous" admission by amending his pleading, (12/18/18 Hr'g Tr. at 4:21), the amendment to the Complaint added nothing of substance.[6] (Mullen Decl. Ex. B (blackline).) The Complaint *still* does not allege when the statement was made, or by whom, or what words were used. *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2008) ("It is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.")

---

[6] Plaintiff has not explained why the amended Complaint neglects to plead the "very serious" allegation, made by Plaintiff's counsel at the pre-motion conference, that one of M3's lawyers told him that M3 was "broke, that they didn't have any money." (12/18/2018 Hr'g Tr. at 4:18.) The omission is damning.

The allegation is also contrary to documentary proof.  The Rejection Letter of April 30, 2018, shows that when Ricatto rejected M3's funding request, he had at most a "belief" that M3 lacked funds.  (Ans. Ex. F at 2 ("M3's [conduct] leads us to believe that M3 *may be insolvent* … .") (emphasis added).)  The Rejection Letter exposes as false the allegation that M3 told Ricatto, "unequivocally and repeatedly," that it was out of cash.

The insolvency pretext is also incompatible with the LOC itself.  M3 could not have been "insolvent" when – as all parties agree – it had $1.2 million in available credit under the LOC.

*Third*, to state a claim for anticipatory repudiation, plaintiff must plead that he is ready, willing and able to perform his obligations under the contract at the time of the breach.  *Record Club of Am., Inc. v. United Artists Records, Inc.*, 890 F.2d 1264, (2d Cir. 1989).  Here, the Complaint does not.  Plaintiff does not allege that he was prepared to advance funds to M3 under the LOC.  And the undisputed record demonstrates that Ricatto was not only unwilling to lend, but in fact refused to do so.  (Ans. Ex. F (Refusal Letter).)  Defendants are therefore entitled to judgment.  *See Roache*, 2019 U.S. Dist. LEXIS 30057 at *24 (dismissing repudiation claim for failure to plead plaintiff's willingness to perform); *see also* Restatement (Second) of Contracts § 254 (liability for anticipatory repudiation "is discharged if it appears … that there would have been a total failure by the injured party to perform his return promise").

*Fourth*, "repudiation of a contract is only effective when it is shown that the announcement of an intention not to perform was positive and unequivocal."  *DiFolco v. MSNBC Cable L.L.C.*, 831 F. Supp. 2d 634, 641 (S.D.N.Y. 2011).  Even if the LOC did not expressly preclude verbal repudiation by requiring a "written declaration," (LOC § 5), the Complaint has failed to plead one.  It parrots the common law requirement that repudiation

be "unequivocal[]," (Compl. ⁋ 43), without pleading any unequivocal statement.  That is a

conclusion in search of a fact.

## II.  JUDGMENT MAY ENTER AGAINST PLAINTIFF'S FRAUD CLAIM

Plaintiff's claim for Fraud in the Inducement fails against all defendants because it is

duplicative of the contract claims, and because it fails to plead fraud with particularity.  The

veil-piercing claim against Kietrys fails too.

### A.  The Fraud Claim is Duplicative of the Contract Claims

"[U]nder New York law, where a fraud claim arises out of the same facts as plaintiff's

breach of contract claim, with the addition of only an allegation that defendant never intended

to perform the precise promises spelled out in the contract between the parties, the fraud claim

is redundant and plaintiff's sole remedy is for breach of contract."  *Telecom Int'l Am. Ltd. v.

AT&T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001).  In other words, "dressing up a breach of

contract claim by further alleging that the promisor had no intention … to perform its

obligations thereunder, is insufficient to state" a claim for fraud.  *Id.*[7]

Here, the fraud claim fails because the Complaint's only alleged "misrepresentations"

are mere statements of intent not to perform under the contract.

---

[7] *See also Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012) ("Under New York law, a breach of contract will not give rise to a tort claim unless a legal duty independent of the contract itself has been violated."); *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 184 (2d Cir. 2007) ("under New York Law, a promissory statement of what will be done in the future … gives rise only to a breach of contract cause of action"); *Bridgestone/Firestone v. Recovery Credit Servs.*, 98 F.3d 13, 19 (2d Cir. 1996) ("[I]ntentionally-false statements by [a defendant] indicating his intent to perform under the contract [are] not sufficient to support a claim of fraud under New York law."); *Harries v. Stark*, No. 15-cv-5917 (PKC), 2018 U.S. Dist. LEXIS 56119, at *17-18 (S.D.N.Y. Mar. 30, 2018) ("New York courts have held numerous times that a fraud claim that arises from the same facts as an accompanying contract claim … is subject to dismissal as redundant … .") (quotations omitted) (collecting cases).

*First*, the Complaint alleges that "by entering into" the parties' agreements, Defendants falsely represented "that they would … be in a financial position by October 11, 2018 to make payments to Ricatto … ." (Compl. ¶ 54.)  That is a quintessential expression of intent not to perform under a loan.  "[A]n allegation that defendant never intended to perform the precise promises spelled out in the contract" cannot sustain a claim for fraud.  *Telecom Int'l Am. Ltd.*, 280 F.3d at 196.

*Second*, the Complaint alleges that Defendants falsely represented "that they would … use funds loaned … under the LOC to develop the Property." (Compl. ¶ 54.)  According to the Complaint "all agreements between the parties" required "Defendants … to develop the Property." (Id. ¶ 24.)  Thus taken as true, the fraud claim impermissibly alleges that Defendants harbored intent not to perform under the agreements.

As this Court recently observed in *LiveIntent, Inc. v. Naples*, a narrow exception permits an "allegation that a party made a contractual promise with no intention of performing it … to support an action for fraud, even where that statement relates to an agreement between the parties." 293 F. Supp. 3d 433, 445 (S.D.N.Y. 2018) (citation omitted).  For the exception to apply, the claim "must either (i) demonstrate a legal duty separate from the duty to perform under the contract; (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Id.* (quoting *Bridgestone / Firestone v. Recovery Credit Servs.*, 98 F.3d 13, 19-20 (2d Cir. 1996)) (punctuation omitted).  Here, there is no allegation of an independent duty; both purported misrepresentations were allegedly made "by entering" the parties' agreements, (Compl. ¶ 54), not collaterally; and there is no claim for special damages. The exception is inapplicable.

In sum, the fraud claim "fails because it is simply a breach of contract claim in the tort clothing of (factually unsupported) allegations of an intent to breach." *Telecom Int'l Am. Ltd.*, 280 F.3d at 196.

### B.   Rule 9(b) Requires Particularity

Federal Rule of Civil Procedure 9(b) requires plaintiff to "state with particularity the circumstances constituting the fraud." Fed. R. Civ. P. 9(b).  To satisfy the heightened pleading standard, a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank N.A.*, 459 F.3d 273, 292-93 (2d Cir. 2006).  In addition, Rule 9(b) requires a Complaint to "allege facts that give rise to a strong inference of fraudulent intent." *Berman v. Morgan Keegan & Co.*, 455 Fed. Appx. 92, 95 (2d Cir. 2012) (summary order) (quotation and punctuation omitted).

This Complaint does not.  It alleges, vaguely, that Defendants made misrepresentations "[b]y entering into the MOU, LOC and Promissory Note." (Compl. ¶ 54.)  But it fails to point to specific language in any agreement that constitutes a misrepresentation.  The Complaint thus "fails to identify the statements with specificity" and "does not allege where and when the statements were made," as it must to survive. *E.g.*, *Murray Eng'g P.C. v. Remke*, 17 Civ. 6267 (KPF), 2018 U.S. Dist. LEXIS 134404, at *40-41 (S.D.N.Y. Aug. 9, 2018) (dismissing fraud under Rule 9(b)).

The Complaint also fails to identify the speaker.  It attributes both purported false statements to "M3 and Kietrys, as M3's CEO." (Compl. ¶ 54.)  But "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'" *U.S. Capital Partners, LLC v. Stanwich Capital Advisors, LLC*, No. 14 Civ. 4138 (KPF), 2015 U.S.

Dist. LEXIS 93680, at *13 (S.D.N.Y. July 17, 2015) (dismissing fraud claim for failure to "attribute any one representation to any one individual"); *see Ritani, LLC v. Aghjayan*, 970 F. Supp. 2d 232, 250 (S.D.N.Y. 2013) (granting Rule 12(c) motion against fraud claim because "defendants are clumped together").

The Complaint does not explain why either purported misrepresentation was fraudulent; it falls far short of pleading "facts that give rise to a strong inference of fraudulent intent." Berman, 455 Fed. Appx. at 95. It alleges the conclusion (unsupported by fact) that Defendants had no intent to perform under the agreements, and the further conclusion that "Defendants knew of the falsity of their representations when making them." (Compl. ¶ 56.) Fraud requires more. *U.S. Capital Partners*, 2015 U.S. Dist. LEXIS 93680, at *14 (dismissing fraud claim because "allegation that '[defendants] knew that the representations were false … ' is not enough").

In its only passing attempt to plead intent, the Complaint makes the implausible allegation that, because "M3 currently … is insolvent," Defendants "never intended to repay the funds … loaned to them" in the first place. (Compl. ¶ 55.) That is a false syllogism: insolvency on the date of the Complaint does not support a "strong inference" of fraudulent intent in the past. It is also conclusory, for it pleads no factual matter to support either insolvency or intent. And the assertion is provably false: the Refusal Letter, (Ans. Ex. F), demonstrates Ricatto had no evidence of M3's insolvency in 2017. The fraud claim fails because Defendants do not – and given this record, cannot – plead why Defendants' statements were false.

### C. Threadbare Veil-Piercing Allegations Are Inadequate to State a Claim

The Complaint pleads no false statement by Kietrys.  Instead it alleges that "the Court should pierce the corporate veil and hold Kietrys personally liable" for M3's fraud.  (Compl. ¶ 61.)

New York's choice of law rules provide that the law of the state of incorporation determines when the corporate form will be disregarded.  *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, 241 F. Supp. 31 461, 474 (S.D.N.Y. 2017).  M3 is a Delaware corporation, (Compl. ¶ 3), so Delaware law applies.

"Delaware courts especially take the corporate form very seriously, and will disregard it only in the exceptional case."  *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 975 F. Supp. 2d 392, 401-02 (S.D.N.Y. 2013) (quotations omitted).  They allow veil-piercing in two circumstances:  (1) where there is fraud; or (2) where the corporation is in fact a mere instrumentality or alter ego of its owner.  *A.V.E.L.A.*, 241 F. Supp. 31 at 474-475.  Here, the Complaint pleads no non-conclusory allegation as to either element.  It alleges only the conclusion that Kietrys "has used M3 to engage in … fraud." (Compl. ¶ 60.)  Veil-piercing fails.  *See A.V.E.L.A.*, 241 F. Supp. 31 at 476 (rejecting veil-piercing pleaded with "scant and irrelevant" factual allegations).

### III. JUDGMENT MAY ENTER FOR M3 ON ITS CONTRACT COUNTERCLAIM

A breach of contract claim requires (1) the existence of a contract between the parties; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages. *Johnson*, 660 F.3d at 142.  M3 has established the first three elements on the pleadings.  M3 and Ricatto were parties to the LOC;  M3 performed and did not breach; Ricatto breached by

not lending.  (*Supra.*; Ans. ¶¶ 83-89.)  The Court should enter an order determining that Ricatto is liable to M3 for breach of contract.  Fed. R. Civ. P. 54(b).  Damages may be found at trial.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant judgment on the pleadings.

DATED:      March 11, 2019
            New York, New York

                          MULLEN P.C.

                          _____
                          Wesley M. Mullen (WM1212)
                          Mullen P.C.
                          200 Park Avenue, Suite 1700
                          New York, NY 10166
                          (646) 632-3718
                          wmullen@mullenpc.com

                          *Counsel for Defendants*