UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL RICATTO,

                                Plaintiff,

                -v.-                                        18 Civ. 8404 (KPF)

M3 INNOVATIONS UNLIMITED, INC.,                            **OPINION AND ORDER**
KYLE KIETRYS, and JOHN AND JANE
DOES 1-10,

                                Defendants.

---

KATHERINE POLK FAILLA, District Judge:

On December 6, 2019, this Court issued an Opinion and Order granting in part and denying in part the motion of Defendants M3 Innovations Unlimited, Inc. and Kyle Kietrys for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  *Ricatto* v. *M3 Innovations Unlimited, Inc.*, No. 18 Civ. 8404 (KPF), 2019 WL 6681558 (S.D.N.Y. Dec. 6, 2019) ("*Ricatto I*"). (Dkt. #40).  In particular, the Court dismissed all of Plaintiff Michael Ricatto's claims, but refrained from granting judgment as a matter of law in favor of Defendants' counterclaim.  (*Id.*).

Before the Court now is Plaintiff's motion for reconsideration of the Court's dismissal of his claim that Defendants anticipatorily repudiated certain contracts between the parties.  For the reasons that follow, Plaintiff's motion is denied.

**BACKGROUND**[1]

The Court assumes familiarity with the facts of the case as presented in the Court's December 6, 2019 Opinion.  *Ricatto I*, 2019 WL 6681558, at *1-3. Further, the Court adopts the naming conventions utilized in that Opinion.

Plaintiff filed his motion for reconsideration of the December 6, 2019 Opinion on January 3, 2020.  (Dkt. #43, 44).  Defendants filed their opposition papers on January 24, 2020.  (Dkt. #51).  The motion became fully briefed when Plaintiff filed his reply papers on February 7, 2020.  (Dkt. #53).

**DISCUSSION**

**A.    Applicable Law**

"The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court."  *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 383, 403 n.6 (S.D.N.Y. 2011) (quoting *Patterson* v. *United States*, No. 04 Civ. 3140 (WHP), 2006 WL 2067036, at *1 (S.D.N.Y. July 26, 2006)).  Under

---

[1]    This Opinion draws its facts from Plaintiff's Amended Complaint ("Am. Compl." (Dkt. #26)), the well-pleaded allegations of which are taken as true for purposes of this motion, and the exhibits attached to the Amended Complaint.  These exhibits include: (i) the Memorandum of Understanding Regarding Intent to Enter into Partner Agreement; (ii) the Line of Credit Agreement; (iii) the Promissory Note; and (iv) the Lease. (Am. Compl., Ex. B, C, D, E).  The Court may consider these attachments to the pleadings.  *See, e.g.*, *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (finding that district courts may consider "documents appended to the complaint or incorporated in the complaint by reference" when assessing the sufficiency of a pleading (quoting *Concord Assocs., L.P.* v. *Entm't Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016))).  Where relevant, the Opinion also draws from Defendants' Answer to the Amended Complaint and Counterclaims ("Countercl." (Dkt #32)), and Plaintiff's Answer to the Counterclaims ("Answer to Countercl." (Dkt. #37)).

For convenience, the Court refers to Plaintiff's Memorandum of Law in Support of the Motion for Reconsideration as "Pl. Recon. Br." (Dkt. #44); Defendants' Memorandum of Law in Opposition to the Motion for Reconsideration as "Def. Recon. Opp." (Dkt. #51); and Plaintiff's Reply Memorandum of Law in Further Support of the Motion for Reconsideration as "Pl. Recon. Reply" (Dkt. #53).

Local Rule 6.3 and Federal Rule 52(b), the moving party must "point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader* v. *CSX Transp. Inc.*, 70 F.3d 255, 256-57 (2d Cir. 1995) (internal citations omitted) (noting that the standard for granting motions for reconsideration is "strict"); *accord Van Buskirk* v. *United Grp. of Cos., Inc.*, 935 F.3d 49, 54 (2d Cir. 2019).

Compelling reasons for granting a motion for reconsideration are limited to "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd.* v. *Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks and citation omitted); *accord Kolel Beth Yechiel Mechil of Tartikov, Inc.* v. *YLL Irrevocable Tr.*, 729 F.3d 99, 108 (2d Cir. 2013). A motion for reconsideration is, of course, "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple[.]'" *Analytical Surveys, Inc.* v. *Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp.* v. *GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)); *see also Stone* v. *Theatrical Inv. Corp.*, 80 F. Supp. 3d 505, 506 (S.D.N.Y. 2015) (observing that a motion for reconsideration "is neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced" (internal quotations and citations omitted)). "A motion for reconsideration may not be used to advance … issues or arguments

3

not previously presented to the Court." *Davidson* v. *Scully*, 172 F. Supp. 2d 458, 462 (S.D.N.Y. 2001) (citing *Shrader*, 70 F.3d at 257).

## B.    Analysis

In his motion for reconsideration, Plaintiff argues that the Court erred in granting Defendants' motion for judgment on the pleadings as to his anticipatory repudiation claim.  Plaintiff's claim is premised on his belief that "the Court overlooked substantial controlling law supporting Plaintiff's claim for anticipatory breach." (Pl. Recon. Br. 4-5).  But, as explored in detail below, Plaintiff's motion for reconsideration is both untimely and deficient on the merits, and it provides no reason for the Court to reconsider its prior decision.

### 1.    Plaintiff's Motion for Reconsideration Is Untimely

Under Local Rule 6.3, a motion for reconsideration "of a court order determining a motion shall be served within fourteen (14) days after the entry of the Court's determination of the original motion."  Here, it is undisputed that Plaintiff filed his motion for reconsideration 28 days after the Court's determination of the underlying motion.  (Dkt. #40, 44).  Courts in this District and in this Circuit have consistently held that the untimeliness of a motion for reconsideration is reason enough to deny the motion.  *See, e.g.*, *McGraw-Hill Glob. Educ. Holdings, LLC* v. *Mathrani*, 293 F. Supp. 3d 394, 397 (S.D.N.Y. 2018); *see also Cyrus* v. *City of N.Y.*, No. 06 Civ. 4685 (ARR) (RLM), 2010 WL 148078, at *1 (E.D.N.Y. Jan. 14, 2010) (collecting cases); *Farez-Espinoza* v. *Napolitano*, No. 08 Civ. 11060 (HB), 2009 WL 1118098, at *2 (S.D.N.Y. Apr. 27, 2009) (collecting cases).  And while Plaintiff urges the Court to exercise its

discretion to reconsider its prior opinion under Federal Rule of Civil Procedure 54(b), Plaintiff offers no justification for his delay in filing the motion for reconsideration.  (Pl. Recon. Br. 2-3).  Instead, Plaintiff argues that the Court should excuse the untimeliness of his motion because, if it were to do so, it would find in Plaintiff's favor, thus promoting the "just, speedy, and inexpensive determination" of Plaintiff's claim.  (*Id.* (citing *Somlyo* v. *J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1048 (2d Cir. 1991))).  The Court is not fully persuaded by the logic of Plaintiff's argument, which would seem to replace the temporal deadlines of Rule 6.3 with a merits-based standard.  In any event, the Court finds that Plaintiff's motion for reconsideration lacks merit, and accordingly does not promote the just, speedy, and inexpensive resolution of this case.  As a first basis for denial, Plaintiff's motion is denied as untimely.[2]

### 2.    Plaintiff's Motion for Reconsideration Fails on the Merits

Even if the Court were to consider Plaintiff's motion for reconsideration on the merits, it would fail, providing an independent basis for denial.  Plaintiff argues that the Court dismissed his claim for anticipatory repudiation without considering all the ways in which Plaintiff could have adequately pleaded an

---

[2]     Plaintiff argues in the alternative (*see* Pl. Recon. Br. 3) that the Court could treat his motion for reconsideration as having been filed pursuant to Federal Rule of Civil Procedure 59(e), under which it would be timely.  *See* Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.").  At this time, however, the Court has not entered a judgment, as Defendants' counterclaims have not been conclusively adjudicated.  Rule 54(b) permits the Court to enter a final judgment "as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b).  The Court has made no determination that final judgment should be entered against Plaintiff at this time, though each of his claims has been dismissed. Indeed, none of the parties has requested that the Court make such a determination. Thus, Plaintiff's motion for reconsideration could not have been filed pursuant to Rule 59(e).

5

anticipatory repudiation claim. (Pl. Recon. Br. 4-7). According to Plaintiff, the Court considered only whether he had stated a claim for anticipatory repudiation by alleging that Defendants had positively and unequivocally expressed their intent to breach the operative contracts. (*Id.*). The Court's error, Plaintiff argues, was in failing to consider that Plaintiff had also stated a claim for anticipatory repudiation under theories that: (i) Defendants had failed to provide adequate assurance of their future performance; and (ii) Defendants had voluntarily placed themselves in a position where they could not possibly perform their contractual duties. (*Id.*). Plaintiff claims that, had the Court considered these alternative theories of his case, his anticipatory repudiation claim would have survived Defendants' motion for judgment on the pleadings.

Plaintiff's argument that the Court "overlooked substantial controlling law" that would have permitted his claim to survive is simply wrong. The Court will address each of the alternative theories of the case that Plaintiff advances in his motion for reconsideration, before briefly noting the alternative ground for dismissal of Plaintiff's anticipatory repudiation claim raised in the December 6, 2019 Opinion. *Ricatto I*, 2019 WL 6681558, at *8.

### a.  Plaintiff Could Not Allege an Anticipatory Repudiation Claim Based on Defendants' Failure to Provide Adequate Assurance of Future Performance

In his motion for reconsideration, Plaintiff cites *Norcon Power Partners* v. *Niagara Mohawk Power Corp.*, 92 N.Y.2d 458, 468 (1998), for the proposition that:

> where an obligor indicates, through ambiguous
> language or actions, that it might breach or be unable

> to perform, the obligee is entitled to request adequate
> assurance of the obligor's performance.  If the obligor
> refuses to provide assurance, the obligee may treat the
> refusal as an anticipatory repudiation.

(Pl. Recon. Br. 4).  This argument — that Plaintiff stated a claim for anticipatory repudiation by alleging that Defendants had failed to provide adequate assurance of approval — does not appear in Plaintiff's opposition papers to Defendants' motion for judgment on the pleadings.  (*See generally* Pl. Opp.).  There, Plaintiff opposed dismissal of his anticipatory repudiation claim by arguing that Defendants had "explicitly indicated to [Plaintiff] that [Defendant M3 was] insolvent and out of money."  (*Id.* at 18).  Plaintiff's earlier failure to argue a theory of anticipatory repudiation based on adequate assurance precludes him from raising it now on a motion for reconsideration. *See Analytical Surveys, Inc.*, 684 F.3d at 52 (stating that a motion for reconsideration is "not a vehicle for … presenting the case under new theories[.]").

But it comes as no surprise to the Court that Plaintiff did not raise this argument at the Rule 12(c) stage, because Plaintiff also failed to allege such a claim in his pleadings.[3]  In other words, assuming that Plaintiff was entitled to demand adequate assurance of future performance, he failed to plead with sufficient particularity that Defendants anticipatorily repudiated by failing to comply with such a demand.

---

[3]     In point of fact, Plaintiff's pleadings make plain that his only theory of anticipatory repudiation was that Defendants had "expressly and absolutely repudiated [their] contractual duties."  (Am. Compl. ¶ 44).

### i.    Plaintiff Was Not Entitled to Demand Adequate Assurance of Future Performance

As an initial matter, it is not obvious to this Court that Plaintiff was entitled to demand that Defendants provide adequate assurance of future performance.  New York's Uniform Commercial Code provides that a party to a contract for the sale of goods may "in writing demand adequate assurance of due performance" when "reasonable grounds for insecurity arise with respect to the performance of" the other party, and until he receives such assurance, suspend his own performance.  N.Y. U.C.C. § 2-609; *Merrill Lynch Int'l* v. *XL Capital Assur. Inc.*, 564 F. Supp. 2d 298, 306 (S.D.N.Y. 2008).  "New York common law recognizes the exceptional doctrine of demand for adequate assurance" also applies "when a promisor becomes insolvent," even where the U.C.C. is not implicated.  *Norcon Power Partners,* 92 N.Y.2d at 462.

In *Norcon*, the case that is the cornerstone of Plaintiff's adequate-assurance argument, the New York Court of Appeals extended the doctrine of adequate assurance "in limited circumstances, *viz.*, where it found the contract at issue to be closely analogous to one for the sale of goods."  *Merrill Lynch Int'l,* 564 F. Supp. 2d at 306 (analyzing *Norcon Power Partners,* 92 N.Y.2d 458).  Specifically, *Norcon* answered a certified question from the Second Circuit Court of Appeals, which asked if the parties to a contract for 25-year agreement to purchase electricity could demand adequate assurance, even though the contract was not governed by the U.C.C.  *Norcon Power Partners*, 92 N.Y.2d at 464-70.  The New York Court of Appeals held that the parties could do so, because the contract at issue would have been governed by the U.C.C.

8

had it involved the purchasing of a commodity rather than electricity, and the contract was a "long-term commercial contract between corporate entities …, which is complex and not reasonably susceptible of all security features being anticipated, bargained for and incorporated in the original contract."  *Id.* at 468.  The Court specifically declined to extend the doctrine of adequate assurance outside of this limited context.  *Id.*

Since *Norcon* was decided, courts have been "reluctant to extend the right to demand adequate assurances of performance beyond insolvency settings, contracts for the sale of goods governed by the Uniform Commercial Code, and closely analogous contracts."  *Jordan* v. *Can You Imagine, Inc.*, 485 F. Supp. 2d 493, 502 n.5 (S.D.N.Y. 2007); *accord First Nat'l Bank of Pa.* v. *Transamerica Life Ins. Co.,* No. 14 Civ. 1007 (CRE), 2017 WL 2880854, at *15 (W.D. Pa. July 6, 2017); *see also Merrill Lynch Int'l*, 564 F. Supp. 2d at 306 (determining that New York would not extend the doctrine of adequate assurance to a credit default swap agreement); *Bank of N.Y.* v. *River Terrace Assocs., LLC*, 804 N.Y.S.2d 728, 729 (1st Dep't 2005) ("The Court of Appeals has enjoined the courts to proceed warily in extending this UCC doctrine to the common law of this State."); *Scott-Macon Secs., Inc.* v. *Zoltek Co.*, No. 04 Civ. 2124 (MBM), 2005 WL 1138476, at *16 (S.D.N.Y. 2005) (questioning whether, under *Norcon*, the doctrine of demand for adequate assurance applies to "this non-UCC case"). The contracts at issue here are not for the sale of goods, and thus would not be governed by the U.C.C.  Plaintiff nevertheless argues that he would be entitled to demand adequate assurance for two reasons: (i) the adequate assurance

doctrine extends to the contract at issue here; and (ii) Defendants were insolvent.  (Pl. Recon. Reply 5-8).

The Court is persuaded that a loan agreement is *not* similar to a contract for the sale of goods, and thus would not give rise to right to demand adequate assurance under *Norcon*.  In extending the doctrine of adequate assurance to a contract for the sale of electricity, the court in *Norcon* noted that the contract was complex and "not reasonably susceptible of all security features being anticipated, bargained for and incorporated in the original contract." *Norcon Power Partners*, 92 N.Y.2d at 468.  By contrast, the contract at issue here was a garden-variety loan agreement, and the parties to it were clearly capable of bargaining for and incorporating security features.  Indeed, the parties bargained to include a provision under which M3 would default if it admitted "in writing its inability to pay its debts as they become due," or failed to make interest payments within 10 days of the payment's due date.  (Am. Compl., Ex. C at 2).  Further, the Court is aware of no decision extending the doctrine of adequate assurance to a loan agreement or analogous contract.

### ii.    Plaintiff's Pleadings Are Deficient

Plaintiff's argument that he was entitled to demand adequate assurance because Defendants were insolvent may have more traction.  Plaintiff alleges that in April 2018, M3's representatives stated that M3 did not have any money and had no means to obtain further funding.  (Am. Compl. ¶¶ 28-29).  Under New York law, as it existed in 2018, "[a] person is insolvent when the present fair salable value of his assets is less than the amount that will be required to

pay his probable liability on his existing debts as they become absolute and matured." N.Y. Debt. & Cred. Law § 271(1) (McKinney 2018). The Court will assume, for purposes of this motion, that Plaintiff adequately pleaded that Defendants were insolvent in April 2018, and thus assumes that Plaintiff was entitled to demand adequate assurance.

Even with these assumptions, Plaintiff's argument fails on the merits because of deficiencies in pleading. Under the doctrine of adequate assurance, a repudiation of a contract is deemed confirmed where: (i) a party to a contract has reasonable grounds for insecurity of future performance by the other party; (ii) the party makes a written demand of assurance of future performance by the other party; (iii) the other party fails to provide adequate assurance of future performance within a reasonable time. *See Norcon*, 92 N.Y.2d at 463-64. The Court accepts that the Amended Complaint contains allegations that would suggest that Plaintiff had a reasonable basis to doubt Defendants' ability to comply with their contractual obligations. *See* RESTATEMENT (SECOND) OF CONTRACTS § 251(1) ("Where reasonable grounds arise to believe that the obligor will commit a breach by non-performance that would of itself give the obligee a claim for damages for total breach under § 243, the obligee may demand adequate assurance of due performance[.]"). Even so, the Court finds that the Amended Complaint does not allege facts necessary to assert a plausible claim for failure to provide adequate assurance of future performance for three reasons.

11

*First*, Plaintiff argues on reconsideration that he requested M3's financial information to confirm that Defendants were solvent and would be able to repay the loan when it came due. (Pl. Recon. Br. 7). Not so. Plaintiff's request for financial information cannot fairly be categorized as a "demand for adequate assurance of future performance." *Norcon Power Partners,* 92 N.Y.2d at 460. In the Amended Complaint, Plaintiff made clear that he sought M3's financial information based on his contemporaneous belief that he was entitled to these records under a provision of the MOU that granted Plaintiff access to "relevant company information for the purpose of completing the Partnership Agreement." (Am. Compl. ¶ 31). But, as the Court determined in its prior Opinion, the MOU was nonbinding and did not require Defendants to disclose this financial information to Plaintiff. *Ricatto I*, 2019 WL 6681558, at *6.

Plaintiff further pleaded that he sought M3's financial information not to ensure that M3 would be capable of paying the loan when it came due, but rather to "ensure that M3 was complying with the terms of the MOU and LOC." (Am. Compl. ¶ 30). This allegation, too, stems from Plaintiff's mistaken belief that Defendants were contractually obligated to use the loaned funds only in certain specified ways. *See Ricatto I*, 2019 WL 6681558, at *5-7. In short, Plaintiff was clear in his pleading that he requested financial information that would allow him to gauge whether Defendants were using the loaned funds in a manner that comported with Plaintiff's incorrect interpretation of the underlying contracts. (Am. Compl. ¶¶ 30-36, 47-52). Plaintiff did *not* plead that he demanded assurance that Defendants would be capable of paying loans

12

in October 2018, when payments began to be due.  (*Id.* at ¶ 40).  *See Wells Fargo Bank, N.A.* v. *Sharma*, 642 F. Supp. 2d 242, 251 (S.D.N.Y. 2009) (finding that the plaintiff had not demanded adequate assurance of future performance where he had merely sought a declaration concerning the parties' rights under the contract and clarity concerning the contract's enforceability).[4]  Self-evidently, Defendants could not have anticipatorily repudiated if there had been no demand for adequate assurance of future performance.  *Norcon Power Partners,* 92 N.Y.2d at 460.

*Second*, even if a demand for adequate assurance had been made, Plaintiff has not pleaded with sufficient particularity that Defendants were given a reasonable time within which to provide such assurance.  *Norcon Power Partners,* 92 N.Y.2d at 462; N.Y. U.C.C. § 2-609.  The Amended Complaint alleges that Plaintiff learned of information establishing a reasonable doubt about Defendants' ability to repay its debt in April 2018 (Am. Compl. ¶ 28); Plaintiff rejected Defendants' request for additional funds on April 30, 2018 (Countercl. ¶¶ 57, 60-61 & Ex. E, F; Answer to Countercl. ¶¶ 57, 60-61); and Defendants provided Plaintiff with certain financial information on August 22, 2018 (Am. Compl. ¶ 32).  But the Amended Complaint does not allege *when* Plaintiff delivered a demand for adequate assurance to Defendants.  Without

---

[4]     The Amended Complaint also fails to allege that Plaintiff's request for financial information was made in writing.  *See Federated Retail Holdings, Inc.* v. *Sanidown, Inc.*, No. 06 Civ. 6119 (LTS) (THK), 2009 WL 4927560, at *4 (S.D.N.Y. Dec. 16, 2009) (stating that "the demand for adequate assurance must be made 'in writing'").  This by itself would defeat any argument that Plaintiff adequately pleaded that Defendants failed to provide adequate assurance of future performance.

this information, Plaintiff could not have pleaded with sufficient particularity that Defendants received a demand before Plaintiff refused to abide by the LOC on April 30, 2018, let alone that Defendants were given a "reasonable time" to respond to that demand before Plaintiff assumed anticipatory repudiation.

*Third* and finally, Plaintiff does not allege that the financial information that Defendants did provide failed to offer adequate assurance of future performance.  The Amended Complaint alleges that the financial information that Defendants provided "raised more concerns regarding the partnership" because it reflected that Defendants had "made numerous expenses" using funds loaned by Plaintiff "for the benefit of the officers, directors and shareholders of M3, as opposed to for the benefit of advancing the project." (Am. Compl. ¶¶ 33, 34).  These pleadings again appeal to Plaintiff's mistaken belief that Defendants were required to use the loaned funds in a manner that advanced the parties' mutual undertaking.  But the Amended Complaint does not allege that the financial information established that Defendants would be unable to make payments on the loans in August 2018.  Thus, assuming the financial information was provided within a reasonable time after the demand was made, Plaintiff has not pleaded with sufficient particularity that the assurance Defendants offered was inadequate.

In short, Plaintiff's argument for reconsideration of the dismissal of its anticipatory repudiation claim based on a theory of Defendants' failure to provide adequate assurance of future performance must fail.  That theory was

not raised in Plaintiff's initial briefing and, more importantly, was not adequately pleaded in the Amended Complaint.

### b. Plaintiff Could Not Allege an Anticipatory Repudiation Claim Based on Impossibility of Performance

Next, Plaintiff argues that the Court should reconsider its dismissal of Plaintiff's anticipatory repudiation claim because the Court failed to consider that this claim could survive if Defendants voluntarily placed themselves in a position where they could not possibly perform their contractual duties. (Pl. Recon. Br. 7-10). But as the Court stated in its December 6, 2019 Opinion, anticipatory repudiation "can be either a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages for total breach or a voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach." *Ricatto I*, 2019 WL 6681558, at *7 (quoting *Princes Point LLC* v. *Muss Dev. L.L.C.*, 30 N.Y.3d 127, 133 (2017)). As this citation makes clear, the Court did not fail to consider the relevant case law, nor did it overlook the possibility that Plaintiff might have pleaded anticipatory repudiation by alleging that Defendants had made themselves unable to perform.

Plaintiff's reconsideration arguments do not give the Court reason to revisit its decision. The crux of Plaintiff's current argument is that Defendants voluntarily misused the funds that had been loaned to them instead of developing the Property in a way "that was reasonably calculated for profit … effectively ensuring their inability to repay the loan by spending it on luxuries."

15

(Pl. Recon. Opp. 5).  But, as the Court already determined, the operative contracts did not require Defendants to use the funds to develop the property. *Ricatto I*, 2019 WL 6681558, at *5-7.  Further, even if Defendants were not profitable in April 2018, it would not mean that it was impossible or apparently impossible for Defendants to make payments to Plaintiff in October 2018, when payments began to be due:

> This is especially true here, where Defendants had a contractual right to the advancement of additional funds from Plaintiff under the LOC and made a request for such an advancement in April 2018. These funds could have been invested to make M3 profitable before October 2018 or, at the very least, used to pay interest as it became due under the Promissory Note until another source of funding was found.

*Ricatto I*, 2019 WL 6681558, at *8.  (*See also* Am. Compl. ¶ 40).  Thus, Plaintiff has failed to plead that Defendants anticipatorily repudiated the contracts by voluntarily placing themselves in a position that rendered them apparently unable to perform their contractual obligations.

### c.   Plaintiff Failed to Plead That He Was Otherwise Ready, Willing, and Able to Perform

In the December 6, 2019 Opinion, the Court noted an independent ground for granting judgment on the pleadings as to Plaintiff's anticipatory repudiation claim:

> "A plaintiff claiming anticipatory breach of contract must show ... that the plaintiff was 'ready, willing, and able to perform its own obligations under the contract when performance was due." *Randolph Equities, LLC* v. *Carbon Capital, Inc.*, 648 F. Supp. 2d 507, 519 (S.D.N.Y. 2009) (quoting *United States* v. *Hon Yee-Chau*, 17 F.3d 21, 26 (2d Cir. 1994)), *cited in* Def. Br. 18.  The Amended Complaint contains no allegation

16

> that Plaintiff was ready, willing, and able to perform his
> obligations under the LOC but for Defendants'
> anticipatory repudiation. Indeed, the letter Plaintiff
> sent on April 30, 2018, denying Defendants' request for
> an additional $200,000 advancement under the LOC,
> indicates that Plaintiff was unwilling to abide by the
> terms of the agreement. (Countercl., Ex. F). There,
> Plaintiff wrote that he would not supply Defendants
> with additional funds, because he believed that
> Defendants had misused funds that had previously
> been advanced. (*Id.*). This letter establishes that
> Plaintiff refused to comply with his contractual
> obligations and was not otherwise willing to perform
> under the LOC for a reason entirely independent of
> Defendants' alleged insolvency.

*Ricatto I*, 2019 WL 6681558, at *8.

Plaintiff did not attempt to grapple with this independent ground for

dismissal of his anticipatory repudiation claim in his opening brief in support

of his motion for reconsideration. (*See generally* Pl. Recon. Br.). In his reply

brief, Plaintiff argues that

> at the pleading stage, it is the defendant that bears the
> burden of showing the plaintiff was not ready, willing,
> and able to perform; the burden only shifts to the
> plaintiff once the suit proceeds to judgment on the
> facts.… No facts are present suggesting Plaintiff was
> not ready, able, and willing to advance more funds but
> for Defendants' preceding breach; his refusal to do so
> after their breach says nothing about his willingness
> beforehand.

(Pl. Recon. Reply 4). The Court disagrees with Plaintiff on both counts.

At the pleading stage, it is Plaintiff's burden to plead with sufficient

particularity facts that would support a claim for relief. *Bell Atl. Corp.* v.

*Twombly*, 550 U.S. 544, 570 (2007) (holding that a motion to dismiss or for

judgment on the pleadings should be denied if the non-movant has alleged

"enough facts to state a claim to relief that is plausible on its face.").[5]  Here, the Amended Complaint contains no allegations that Plaintiff was ready, willing, and able to perform his contractual obligations — specifically, to loan Defendants funds as required under the LOC — but for Defendants' alleged anticipatory repudiation.  Instead, the record[6] suggests that, whether or not Defendants were capable of upholding their end of the contracts, Plaintiff would not have loaned Defendants any additional funds because Plaintiff did not approve of how the previously-loaned funds had been used.  *Ricatto I*, 2019 WL 6681558, at *8.  Thus, Plaintiff has offered no reason for the Court to reconsider its determination that Plaintiff had not pleaded his readiness, willingness, or ability to perform his own obligations under the contracts, let alone a reason that could properly be advanced on a motion for reconsideration.

---

[5]    It is true that "[g]enerally, '[t]he issue of repudiation or abandonment is an issue of fact.'" *DiFolco* v. *MSNBC Cable LLC*, 622 F.3d 104, 112 (2d Cir. 2010) (quoting *Bercow* v. *Damus,* 776 N.Y.S.2d 289, 291 (2d Dep't 2004)).  However, this is true only where the pleadings state a plausible claim for relief.  As the Court determined in its December 6, 2019 Opinion and again here, Plaintiff's Amended Complaint has failed to plead a plausible claim for anticipatory repudiation, especially when read in light of the documents appended to Defendants' Answer.  *See In the Matter of the Trusteeships Created by Tropic CDO I Ltd.*, 92 F. Supp. 3d 163, 171 (S.D.N.Y. 2015) (stating that in deciding a motion for judgment on the pleadings, if the allegations of a pleading "are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the [pleading]" (quoting *Sazerac Co.* v. *Falk,* 861 F. Supp. 253, 257 (S.D.N.Y. 1994)).

[6]    The scope of the record that may be considered in deciding a motion for judgment on the pleadings was discussed in the December 6, 2019 Opinion.  *Ricatto* v. *M3 Innovations Unlimited, Inc.*, No. 18 Civ. 8404 (KPF), 2019 WL 6681558, at *3-4 (S.D.N.Y. Dec. 6, 2019); *see also Roberts* v. *Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009).

18

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for reconsideration is DENIED.  The Clerk of Court is directed to terminate the motion at docket entry 43.

SO ORDERED.

Dated:      May 7, 2020
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge