UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL RICATTO,

    Plaintiff,

      - v -

M3 INNOVATIONS UNLIMITED INC., et al.,

    Defendants.

No. 18 CV 8404 (KPF)

---

### M3's CONSOLIDATED MEMORANDUM OF LAW

IN FURTHER SUPPORT OF

### M3's MOTION FOR PARTIAL SUMMARY JUDGMENT
### AS TO LIABILITY ON ITS CLAIM FOR BREACH OF CONTRACT

AND IN OPPOSITION TO

### MR. RICATTO's CROSS-MOTION FOR SUMMARY JUDGMENT

---

MULLEN P.C.
200 Park Avenue | Suite 1700
New York, NY 10166
(646) 632-3718
wmullen@mullenpc.com

*Counsel for M3 Innovations Unlimited, Inc.*

## TABLE OF CONTENTS

**OVERVIEW** .................................................................................................................. 4

**THE CROSS-MOTION'S RULE 56.1 STATEMENT IS FLAWED** ............................. 5

**ARGUMENT** ................................................................................................................. 6

    A.    The Court should grant partial summary judgment for M3 as to liability for breach of the LOC .............................................................. 6

        1.    Mr. Ricatto breached the LOC by refusing to advance funds to M3 ............................................................................. 6

        2.    There is no genuine dispute of material fact, and Mr. Ricatto's attempt to manufacture one should fail ........................ 8

    B.    Mr. Ricatto's cross-motion should be denied because disputed issues of fact preclude summary judgment ...................................................10

        1.    Breach of contract .................................................................................10

            a.    M3 had no obligation to raise funds .......................................10

            b.    M3 was not insolvent and did not admit insolvency in writing .....................................................10

            c.    The parties dispute damages ...................................................12

         2.    Breach of the implied covenant .........................................................14

         3.    Promissory estoppel .............................................................................16

         4.    Intentional interference........................................................................17

         5.    Unjust enrichment................................................................................18

**CONCLUSION**...........................................................................................................19

## TABLE OF AUTHORITIES

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......................................................................... 6

*Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp. N.V.*,
    28 F.Supp.2d 126 (S.D.N.Y. 1998) ...................................................................... 11, 12

*Point Prods. A.G. v. Sony Music Entm't, Inc.*,
    215 F. Supp. 2d 336 (S.D.N.Y. 2002) ..................................................................... 13

Fed. R. Civ. P. 56 ............................................................................................................. 6, 11

Fed. R. Evid. 401 ................................................................................................................. 11

Fed. R. Evid. 402 ................................................................................................................. 11

Fed. R. Evid. 901 ................................................................................................................. 11

Local Civil Rule 56.1 ............................................................................................................ 5

M3 respectfully submits this memorandum of law in further support of its motion for partial summary judgment as to liability on its counterclaim for breach of contract, (ECF Doc. 95); and in opposition to Mr. Ricatto's cross-motion for summary judgment on all of M3's claims. (ECF Doc. 100 (the "Cross-Motion").)

## OVERVIEW

No party disputes that Mr. Ricatto promised to lend up to $2 million dollars to M3 under a revolving Line of Credit Agreement (the "LOC"). (*Infra* § A.1.) No party disputes that M3 asked for $200,000 on April 26, 2018, or that Mr. Ricatto refused to lend it. (*Id.*)

Now that discovery is closed and summary judgment is fully briefed,[1] no party can *genuinely* dispute that Mr. Ricatto's refusal was unjustified and that it constituted a breach of the LOC. (*Infra* § A.2.) Mr. Ricatto admitted, and documentary evidence proves, that M3 was *not* in default under the LOC on the date Mr. Ricatto rejected M3's request. (*Id.*) And so, because Mr. Ricatto breached the contract, summary judgment should enter for M3 as to liability.

\* \* \*

Damages are hotly disputed by the parties and their experts, and will be proved at trial. (*Infra* § B.1.c.)

\* \* \*

As to the Cross-Motion,[2] myriad disputes of material fact preclude summary judgment for Mr. Ricatto. (*Infra* § B.)

---

[1] *See* Apr. 5, 2021 Order (ECF Doc. 92) ("Each party shall submit one brief in opposition to their counterparty's motion for summary judgment and in further support of their cross-motion.")

[2] M3 refers to Mr. Ricatto's Memorandum of Law in Support of the Cross-Motion for Summary Judgment, (ECF Doc. 101), as the "Cross-Motion" and cites it as "Cross-Mot."

## THE CROSS-MOTION'S RULE 56.1 STATEMENT IS FLAWED

Local Civil Rule 56.1 requires a "short and concise statement … of the material facts as to which the moving party contends there is no genuine issue to be tried." The Rule 56.1 statement annexed to the Cross-Motion is pervasively flawed in ways that preclude summary judgment for Mr. Ricatto.

*First*, the 56.1 statement does not reliably represent the record it cites. Paragraph 143 claims as undisputed that "even with additional funding from Ricatto, M3 could not have succeeded," while Paragraph 104 admits that the same matter is disputed because "M3's expert witness, Eric Hoffman, opines that M3 could have succeeded with Ricatto's additional funding." (56.1[3] ¶¶ 104, 143.) Paragraph 96 offers as undisputed that M3 "admitted in writing" that "it was unable to pay its debts as they became due." But Mr. Ricatto testified to the contrary, (56.1 ¶ 21), and the unsigned draft document cited in Paragraph 96, (Cohen Decl. Ex. NN (ECF Doc. 103-40)), contains no such admission, in writing or otherwise. So too, paragraph 139 claims that Mr. Ricatto refused to lend funds to M3 "because … M3 was unable to satisfy its debts." In fact, the cited Rejection Letter from Mr. Ricatto's counsel explains why Mr. Ricatto refused to lend, and it does not support the argumentative characterization that his 56.1 statement presents as "undisputed." (Cohen Decl. Ex. JJJ (ECF Doc. 103-62) at 2.)

*Second*, the 56.1 statement is prolix and argumentative. Instead of "concise[ly]" stating material facts, the 56.1 statement argues conclusions that Mr. Ricatto hopes to prove at trial. Paragraph 102 contends that "M3 repeatedly made irresponsible business decisions."

---

[3] This consolidated opposition and reply cites both parties' Rule 56.1 statements (and the corresponding responses) in the form "56.1 ¶ __." Citations refer to the parties' assertions and to the opponent's responses.

Paragraph 110 argues that "M3 consistently made poor financial decisions." Those are conclusions and characterizations not supported by any M3 admission or other evidence that conclusively establishes them.

And *third*, the 56.1 statement is self-defeating. It advances as undisputed the proposition that M3 "could not have succeeded," (*id.* ¶ 143), while *also* offering as undisputed the proposition that "M3's chances of success were 50/50," (*id.* ¶ 120). It claims "M3 never raised … $2.0 [million]," (*id.* ¶ 36), while also admitting that M3 "obtain[ed] a $2 million line of credit from [Mr.] Ricatto," (*id.* ¶ 50; *compare id.* ¶ 106 ("M3 … could not[] attract … good talent") *and id.* ¶ 86 (M3 "could attract qualified employees").). The 56.1 statement may be set aside in large part because it proves genuine disputes as to the very matters it contends are undisputed.

The Cross-Motion for summary judgment fails for the same reasons, as shown below.

## ARGUMENT

### A. The Court should grant partial summary judgment for M3 as to liability for breach of the LOC

After full briefing on summary judgment, there remains no genuine dispute: Mr. Ricatto refused to lend to M3 in breach of the unambiguous LOC, and he is liable to M3 for damages in an amount to be determined at trial.[4]

#### 1. Mr. Ricatto breached the LOC by refusing to advance funds to M3

The Cross-Motion's own Rule 56.1 statement establishes these material facts:

M3 and Mr. Ricatto signed the LOC on October 11, 2017. (56.1 ¶ 49; *see also id.* ¶¶ 1, 2.) Under the LOC, M3 was borrower and Mr. Ricatto was lender. (*Id.* ¶ 50 (citing LOC (ECF

---

[4] The parties agree on the familiar standards under Rule 56 and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

Doc. 26-3); *see also id.* ¶ 1.) The LOC established a "revolving line of credit," (*id.* ¶ 50), and it obligated Mr. Ricatto lend M3 up to $2 million dollars unless there was an Event of Default, (*id.*; *see* LOC (ECF Doc. 26-3) ¶ 5; 56.1 ¶¶ 3-4).

"On April 26, 2018, M3 requested $200,000 in additional funds from Ricatto under the LOC … ." (56.1 ¶ 69.)[5] "On April 30, 2018, Ricatto sent a letter back to M3 notifying it that he decided not to extend additional funds under the LOC." (*Id.* ¶ 70 (citing Cohen Decl Ex. JJJ (ECF Doc. 103-62) (the "Rejection Letter"); *see also id.* ¶ 24).) The Rejection Letter — on letterhead from Mr. Ricatto's lawyer — states the bases for Mr. Ricatto's "deci[sion]" not to lend. (ECF Doc. 103-62.) None describes an event of default under the LOC, or excuses Mr. Ricatto's breach. (*Id.*)

\* \* \*

The Cross-Motion advances a single contrary argument. It claims that Mr. Ricatto "had an express contractual right to not provide additional funding under the LOC," (Cross-Mot. at 2), because "M3 admitted in writing that it was unable to pay its debts as they became due prior to April 30, 2018 … ," (*id.* at 8).

This new theory of default is dubious not least because the Cross-Motion advances it now for the first time. When Mr. Ricatto filed this action in a pretextual first strike against M3, his position was that an unnamed M3 lawyer admitted to Mr. Ricatto's lawyers that M3 was insolvent. (Under gentle pressure from the Court, Mr. Ricatto later conceded that no one at M3 had ever admitted anything like that in writing. (*See* Dec. 18, 2018 Hr'g Tr. (ECF Doc.

---

[5] Though not established in the Cross-Motion's Rule 56.1 Statement, it is also undisputed that as of April 26, 2018, M3 had borrowed $800,000 from Mr. Ricatto under the LOC. (56.1 ¶ 17 (citing, *inter alia*, Mr. Ricatto's Reply to Counterclaims (ECF Doc. 37) ¶ 58 ("It is admitted … that M3 had drawn down $800,000 under the LOC as of April 26, 2018.).)

23) at 4 (THE COURT: "Let me please stop you because these are very serious allegation that you are making … ."); *id.* at 6-7 (COUNSEL FOR MR. RICATTO: "I don't recall anything in writing, Your Honor.").) Mr. Ricatto's pleadings did not allege that M3 ever admitted in writing that it was insolvent; and Mr. Ricatto never noticed an Event of Default under the LOC, as he was permitted to do had M3 in fact admitted in writing that it could not pay its debts as they came due. (LOC ¶ 5(c).)

But the Court need not rely on the absence of proof to grant partial summary judgment for M3. Admissions M3 submits in support of its Motion, and the materials Mr. Ricatto submits in support of his Cross-Motion, prove beyond genuine dispute that M3 never "admit[ted] in writing" facts that would constitute default.

### 2. There is no genuine dispute of material fact, and Mr. Ricatto's attempt to manufacture one should fail

At least four affirmative sources prove that M3 did not "admit in writing its inability to pay its debts as they bec[a]me due" under Paragraph 5(c)(i) of the LOC. (LOC (ECF Doc. 26-3) ¶ 5(c).)

**First, Mr. Ricatto admitted it at his deposition.** (Ricatto Dep. Tr. (Mullen Aff. Ex. A) (ECF Doc. 97-1) at 181:19-182:1 ("Q. … Other than the telephone and face-to-face communications that you testified about … are there any instances when M3 representatives communicated to you that M3 was insolvent? A: No."); *id.* at 174:12-22 ("Q: … What was the basis for your understanding on April 30th, 2018, that M3 may be insolvent? And you've listed conversations with M3 and the fact that M3 was using funds for purposes they shouldn't be used for. My question is: Was there anything else? A. No."); *id.* at 183:21:184:1 ("Q. Are you aware of any instance when any M3 representative told you or your lawyers in writing that M3 was insolvent? A. I don't know.").)

**Second, Mr. Ricatto admitted it in prior proceedings.** (*See* Ricatto Opp. to 12(c) Mot. (ECF Doc. 38) at ECF page 7 of 26 ("Defendants' … counsel … fail[ed] to confirm his admission of M3's insolvency in writing … ."); *id.* at page 21 of 26 (M3 "continues to rely upon the lack of a written admission of M3's insolvency, but their prior counsel … refused to confirm M3's insolvency in writing."); *see also* Dec. 18, 2018 Hr'g Tr. (ECF Doc. 23) at 4-7.)

**Third, the Rejection Letter admits it.** Even that document — which the Cross-Motion advances as purported proof that M3 "was unable to satisfy its debts as they became due," (*cf.* 56.1 ¶ 139) — proves that on April 30, 2018 Mr. Ricatto (and his counsel) had at best a "belie[f]" that "M3 *may be* insolvent," (Rejection Letter (ECF Doc. 32-6) at 2 (emphasis added)), and that their belief was unsupported by any written "admi[ssion]," (LOC ¶ 5(c)).

**Fourth, a more recent letter from Mr. Ricatto's counsel admits it.** On March 26, 2021, well after the close of discovery in this case, Mr. Ricatto's litigation counsel wrote to M3 and admitted that M3's first payment of principal and interest under the LOC was due "on November 3, 2018." (Mullen Decl. Ex. B (ECF Doc. 97-2) at 2.) The letter proves that there was no Event of Default prior to November 2018, because — if there had been — it would have triggered acceleration, (LOC ¶ 6), and the full loan would have become "immediately due and payable," (*id.*). Thus, there was no Event of Default prior to November 3, 2018, and M3 did not "admit in writing" prior to November 2018 that it was unable to pay its debts. (*Cf.* Cross-Mot. at 8.)

All of the other arguments raised in the Cross-Motion fail as immaterial. None of the oral remarks, unauthenticated documents, or disputed characterizations advanced as evidence of the "difficulties M3 was facing," (*id.* at 9), and of M3's purported "financial

woes," (*id.*), casts doubt on the material and undisputed fact: M3 never admitted in writing its inability to pay debts as they came due.[6]

### B. Mr. Ricatto's cross-motion should be denied because disputed issues of fact preclude summary judgment

#### 1. Breach of contract

The Cross-Motion makes four arguments why no reasonable jury could find for M3 on its breach of contract claim. All four fail.

##### a. M3 had no obligation to raise funds

First, the Cross-Motion argues that Mr. Ricatto is entitled to summary judgment because "M3 did not raise sufficient capital pursuant to its obligations under the LOC." (Cross-Mot. at 2 (citing 56.1 ¶ 50).) M3 does not have obligations to raise capital under the LOC, and the Cross-Motion does not describe any. (*See* LOC (ECF Doc. 26-3); 56.1 ¶ 50.)

##### b. M3 was not insolvent and did not admit insolvency in writing

Next, the Cross-Motion argues that Mr. Ricatto "had every right to decide not to extend additional funding under the LOC" because M3 "admitted in writing that it was unable to pay its debts as they became due prior to April 30, 2018 … ." (Cross-Mot. at 2, 9.) As discussed above, (*supra* § A), there is no genuine dispute that M3 never admitted insolvency in writing. Mr. Ricatto testified under oath that M3 never "admit[ted] in writing its inability to pay its debts as they bec[a]me due" under Section 5(c)(i) of the LOC. (LOC (ECF Doc. 26-3) § 5(c); Ricatto Dep. Tr. (Mullen Decl. Ex. A) (ECF Doc. 97-1) at 181:19-182:1 ("Q. … Other than the telephone and face-to-face communications that you testified about … are

---

[6] *See also infra* § B.1.b for a discussion of the unauthenticated "Meeting Minutes" recording purported and contested oral assertions by M3 personnel. (Cohen Decl. Ex. NN.)

there any instances when M3 representatives communicated to you that M3 was insolvent? A: No."). Mr. Ricatto's testimony was consistent with his prior admissions that M3 never admitted in writing that it was unable to pay its debts. (*See* Ricatto Opp. to 12(c) Mot. (ECF Doc. 38) at ECF page 7 of 26 ("Defendants' … counsel … fail[ed] to confirm his admission of M3's insolvency in writing … ."); *id.* at page 21 of 26 ("M3's … prior counsel … refused to confirm M3's insolvency in writing.").)

In an attempt to walk back those concessions, the Cross-Motion cherry-picks a draft document it calls "Meeting Minutes," (Cross-Mot. at 9), for the proposition that M3 "admitted in writing that it was unable to pay its debts as they became due … ." (*id.* at 8 (citing 56.1 ¶¶ 96-98 & Cohen Decl. Ex. NN (ECF Doc. 103-40).) This bid fails for two independent reasons.

First, the document is not competent to support a Rule 56 motion. The document has a DRAFT legend at the top, (Cohen Decl Ex. NN (ECF Doc. 103-40) at 1), and a blank signature line at the bottom, (*id.* at 4). The Cross-Motion offers no testimony or other evidence to explain who wrote the document or approved it, and it advances nothing to corroborate or to authenticate the purported statements in the unsigned draft.[7] Because there is no proof that the "Meeting Minutes" are what the Cross-Motion claims them to be, the document is unauthenticated, Fed. R. Evid 901; because it is unauthenticated it is not admissible, Fed. R. Evid. 401-02; and because it is inadmissible it is not properly considered on a Rule 56 motion. Fed. R. Civ. P. 56(c)(2); *e.g.*, *Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp. N.V.*, 28

---

[7] (*See* Montgomery Dep. (Cohen Decl. Ex. W) (ECF Doc. 103-24) at 72:17-19 ("I don't remember saying on this board meeting that the company was insolvent."); *id.* at 72:13-15 ("Q. … [W]hy did you say that the company was insolvent? A. I don't even remember saying it … ").)

F.Supp.2d 126, 130 (S.D.N.Y. 1998) ("[A] party may challenge documentary evidence submitted in support of a summary judgment motion on the ground that it constitutes unauthenticated or inadmissible material … .").)

Second, even if the so-called "Meeting Minutes" were properly considered, they still do not prove that M3 "admitted in writing" that it could not pay its debts. (Cross-Mot. at 9.) The document itself proves the opposite. Page one of the unauthenticated "Meeting Minutes" recites that "there was $265,000 in M3 accounts … and … the monthly burn rate [is] $80,000/month … [so] there are sufficient funds on hand for 90 days." (Cohen Decl. Ex. NN (ECF Doc. 103-40) at 1.).) Page two recites that "Mr. Kietrys … was able to show Mr. Ricatto that he should have sufficient cash flow … ." (*Id.* at 2.)

In sum, nothing in the Cross-Motion raises a genuine dispute: M3 never "admit[ted] in writing" that it was unable to pay debts as they came due.

### c. The parties dispute damages

The Cross-Motion claims that "M3 … plainly[] has no demonstrable damages." (Cross-Mot. at 11.) It advances the report of Mr. Ricatto's expert Ms. Stacey Udell for the proposition that "M3 had no value as of spring/summer 2018 and currently." (Cross-Mot. at 10 (citing 56.1 ¶ 142 & Cohen Decl. Ex. JJ (ECF Doc. 103-36) (Expert report of Ms. Udell).) The Cross-Motion also claims that M3 could not have succeeded even if Mr. Ricatto had honored his obligation to lend. (*Id.* at 12, 13.)

But M3 and its expert, Mr. Hoffman, dispute those opinions. (*E.g.* 56.1 ¶ 109; Cohen Decl. Ex. KK (ECF Doc. 103-37) (Expert report of Mr. Eric Hoffman).) The Cross-Motion concedes that they are disputed. (56.1 ¶ 104 ("Hoffman[] opines that M3 could have succeeded with Ricatto's additional funding.").) Mr. Hoffman concludes that M3 was highly

valuable and that it "would have realized at least $130,000,000 in EBITDA for the 5 years of cultivation … presented." (Cohen Decl. Ex. KK (ECF Doc. 103-37) at 4 § 1.03.) The M3 CFO, Ms. Montgomery, testified that M3 "was going to generate $37 million in revenue in 2 years" by growing "a … cannabis crop that would be sold business to business … [and] manufactured as distilled oil [and] maybe other consumer goods." (Montgomery Dep. (Cohen Decl. Ex. W) (ECF Doc. 103-23) at 130:10-17.) CEO Mr. Kietrys testified that the figures should have been even higher. (Kietrys Dep. (Cohen Decl Ex. DD) (ECF Doc. 103-30) at 285:13-14 ("I would say we could have done over $50 million a year … based upon … [f]ive [growing] cycles a year, high-value crop, really good plants."); *id.* at 287:1:3 ("Q. What information did you use to come up with your projections? A. … [W]holesale pricing … for flowers … and … the new trend … in live resins, which has far exceeded expectations.").)

The Cross-Motion devotes nearly five full pages to its discussion of *Point Products*, a 2002 district court case it describes as "particularly instructive." (Cross-Mot. at 3-8 (citing *Point Prods. A.G. v. Sony Music Entm't, Inc.*, 215 F. Supp. 2d 336 (S.D.N.Y. 2002).) *Point Products* stands for the proposition that the plaintiff in a contract case must prove causation. *Id.* at 344. Summary judgment on causation is inappropriate in this case because it is just another disputed aspect of damages: M3 claims (and Mr. Ricatto disputes) that but for Mr. Ricatto's breach of contract, M3 would not have run out of financing or become unable to grow cannabis. (Hoffman Report (Cohen Decl. Ex. KK) ((ECF Doc. 103-37) at 7 § 4 ("[M]y professional opinion in this case is … [i]f the Defendants would have been provided the full funding as agreed by Plaintiff … M3 would have realized at least $130,000,000 in EBITDA … .").)

For these reasons, a genuine dispute as to damages precludes summary judgment for Mr. Ricatto.

The Cross-Motion also argues that Mr. Hoffman is unqualified and that M3 is "trying to pass [him] off as an expert witness." (Cross-Mot. at 13.) Its Rule 56.1 statement insults Mr. Hoffman as a "software installer." (56.1 ¶ 103.) But because the Cross-Motion makes no effort to support with argument — other than argument *ad hominem* — a Fed. R. Evid. 702 challenge to Mr. Hoffman's qualifications or opinions, M3 responds only by observing that Mr. Hoffman is an expert in accounting and financial reporting, (Cohen Decl. Ex. DDD (Hoffman Dep.) (ECF Doc. 103-56) at 29:10-13)), with years of experience in the cannabis industry, (*id.* Ex. KK (Hoffman Report) (ECF Doc. 103-37) at App'x 1), whose testimony has been admitted in other cannabis-related business disputes, (56.1 ¶ 103).

### 2. Breach of the implied covenant

M3's claim for breach of the implied covenant is not "duplicative of M3's breach of contract claim," (Cross-Mot. at 14), and disputes of fact preclude summary judgment for Mr. Ricatto.

As the Cross-Motion explains, a claim for breach of the implied covenant "may be brought … where one party's conduct, though not breaching the terms of the contract in a technical sense, nonetheless deprived the other party of the benefit of its bargain." (*Id.* (citations omitted).) M3 "states an implied covenant claim by alleging conduct that subverts the contract's purpose without violating its express terms." (*Id.* at 15 (citations omitted).)

The Cross-Motion aptly summarizes M3's claims for breach of the implied covenant: Mr. Ricatto breached it "when he did not build a greenhouse, and [when he] received the benefit of Key Money paid to [him] by M3 under the Agreements" without performing his

obligations to develop land in Adelanto that M3 helped him purchase. (Cross-Mot. at 15.) The Cross-Motion offers nothing at all to contradict the undisputed fact that M3 paid nearly a million dollars in "key money" to Mr. Ricatto. (*See* Answer to Counterclaims (ECF Doc. 37) ¶ 42 ("It is admitted … that Plaintiff [Mr. Ricatto] was paid $963,000 in connection with the agreements.").) M3 got nothing in return because Mr. Ricatto walked away from the parties' relationship. (Rolston Decl. ¶ 12.) That suffices, and each of the Cross-Motion's arguments turns on a misstatement of the parties' agreements or a disputed issue of fact.

First, the Cross-Motion claims that M3 "stated in writing that it had an inability to pay its debts as they became due." (Cross-Mot. at 16.) As explained above, that is not so, (*supra* §§ A, B.1.b), and Mr. Ricatto admitted it is not so, (*id.*).

Second, the Cross-Motion argues that "it was not Ricatto's obligation to build a greenhouse on the land." That is false because the Lease says otherwise. (ECF Doc. 26-5 at 1 ("Ricatto, as buyer, entered into the certain Real Estate Purchase Contract … which requires [seller] to oversee, manage, and assist Ricatto or his designee … in purchasing, constructing, and installing a building on the Premises … (the "Greenhouse") … .").) Mr. Ricatto admitted it was his company Golden State Lion's obligation to build a Greenhouse. (Mullen Decl. Ex. D (Mar. 27, 2018 Ltr. from Ricatto's counsel to M3) ("the Lease expressly identifies Landlord [Golden State Lion, LLC] as the party charged with … erect[ing] the Greenhouse.").) Moreover, the portion of the Lease that Mr. Ricatto cites for the proposition that "it was M3's obligation to build out the greenhouse," (Cross-Mot. at 16 (citing 56.1 ¶¶ 50-52)), is conditional, and M3 would only become obligated "after Landlord [Ricatto] has contributed an amount equal to Landlord's Greenhouse Contribution Cap … ," (56.1 ¶¶ 52 (citing Lease (ECF Doc. 26-5) § 1.8(b).) Mr. Ricatto's counsel admitted in March 2018, (Mullen Decl. Ex.

D), that "contribut[ion] of … Landlord's Greenhouse Contribution Cap … has not yet occurred." (emphasis added).)

Thus, at a minimum, a genuine dispute of fact precludes summary judgment against M3 on this ground.

Finally, the Cross-Motion argues that it has "show[n] unequivocally that M3 was totally unable to perform its own obligations." (Cross-Mot. at 16.) Because the Cross-Motion does not describe the obligations it refers to, and because it cites no undisputed facts in support, this too should fail.

### 3. Promissory estoppel

Genuine disputes of fact preclude summary judgment here too. First, the Cross-Motion asserts that M3 "will not be able to demonstrate … injury." (Cross-Mot. at 17 (citing 56.1 ¶¶ 96-97, 101).) That is disputed because M3 claims injury. (56.1 ¶ 109; *see* Hoffman Report (Cohen Decl. Ex. KK).)

Next, the Cross-Motion asserts that M3 cannot demonstrate that "any alleged injury is unconscionable," since "M3 was the cause of its own demise." (Cross-Mot. at 17 (citations omitted).) This too is disputed: M3 claims Mr. Ricatto caused it to fail. (*E.g.* Rolston Decl. ¶¶ 14-15.)

Third, the Cross-Motion claims that "[t]he LOC, which codified the agreement between the parties, imparted on both M3 and Ricatto certain duties" and that "M3 did not fulfil those duties to Ricatto, and did so intentionally[.]" (Cross-Mot. at 18 (citing 56.1 ¶¶ 35-36, 100).) The Cross-Motion does not identify which duties it speaks of; its contention that M3 was "contractually obligated to raise" funds under the LOC is unfaithful to the LOC, which imposes on M3 no duty to raise funds, (*see* 56.1 ¶ 100; LOC (ECF Doc. 26-3)); and in

any event, M3 does not agree with Mr. Ricatto's conclusory assertion that M3 "intentionally" did not "fulfil" unenumerated "duties."

### 4. Intentional interference

M3 and Golden State Lion LLC were parties to a Lease. (56.1 ¶ 52; Lease (ECF Doc. 26-5).) Mr. Ricatto was the sole owner of Golden State Lion, the landlord under the Lease. (*Id.*; (Lease (ECF Doc. 26-5) at 1 (preamble) ("Golden State Lion LLC … of which Michael Ricatto … is the sole member.").) Ricatto interfered with the Lease between M3 and Golden State Lion LLC by, among other things, causing Golden State to breach its obligation to build a greenhouse. (Rolston Decl. ¶ 13; *see* Bischoff Dep. (Cohen Decl. Ex. VV) (ECF Doc. 103-48) at 157:10-17 ("Mike Ricatto … Once he pulls out, the deal is dead. … He owns the land, … he won't give us a lease, which was his agreement.").)

None of the objections in the Cross-Motion is adequate to sustain summary judgment. First, the Cross-Motion contends that Mr. "Ricatto did not seek to act, nor did he act, against his own interest." (Cross-Mot. at 20 (citing 56.1 ¶¶ 31-62).) But nothing in the thirty paragraphs of the Rule 56.1 statement cited justifies the broad proposition offered, let alone proves it by an undisputed fact that would permit summary judgment.

Next, the Cross-Motion contends that Mr. Ricatto "did not intentionally induce a third party to breach an agreement with M3," (Cross-Mot. at 21 (citing 56.1 ¶¶ 35-36, 96-97, 100)). Here too, nothing in the cited paragraphs of the Rule 56.1 statement establishes the Cross-Motion's characterization of the facts. M3 contends, and Mr. Ricatto evidently disputes, that Mr. Ricatto interfered with third-party Golden State Lion's obligation to construct a Greenhouse under the Lease. (*E.g.* 56.1 ¶¶ 41-43.)

Again, the Cross-Motion claims that M3 was obligated to build a greenhouse, and that it "did not uphold its own obligations to diligently prosecute to completion the construction … at its sole cost and expense." (Cross-Mot. at 22.) As explained above, Mr. Ricatto's view of M3's obligations under the Lease does not comport with the Lease or with Mr. Ricatto's own admission that it was not M3's job to build a greenhouse. (*Supra* § B.2; Lease ([ECF Doc. 26-5](#)) at 1 ("Ricatto, as buyer, entered into the certain Real Estate Purchase Contract … which requires [seller] to oversee, manage, and assist Ricatto or his designee … in purchasing, constructing, and installing a building on the Premises … (the "Greenhouse") … ."); Mullen Decl. Ex. D (Mar. 27, 2018 Ltr. from Ricatto's counsel to M3) ("the Lease expressly identifies Landlord [Golden State Lion, LLC] as the party charged with … erect[ing] the Greenhouse.").) But even if the Lease said what the Cross-Motion claims it does, the various facts that the Cross-Motion advances for the proposition that "M3 cannot simply point the finger at Ricatto" are disputed and unsupported by admissible evidence. (*See* Cross-Mot. at 22-23 (citing "undated internal memorandum" for the conclusion that "M3 caused greenhouse delay after greenhouse delay.").)

     **5.    Unjust enrichment**

The bid for summary judgment as to M3's unjust enrichment claim fails for similar reasons. The Cross-Motion claims that "Ricatto did not benefit in any way from engaging with M3," (Cross-Mot. at 24 (citing 56.1 ¶¶ 35-36, 50, 96-100, 133-40)), but none of the cited paragraphs of its Rule 56.1 statement support that proposition.

Moreover, the disputed contention that "M3 caused substantial problems for itself," (*see* Cross-Mot. at 24 (citing 56.1 ¶¶ 84-137), is no basis for summary judgment. M3 paid key money to Mr. Ricatto; Mr. Ricatto promised to use the key money to purchase and develop

land; Mr. Ricatto was enriched at M3's expense because he failed to live up to his end of the bargain; and Mr. Ricatto prematurely terminated the parties' relationship without returning M3's funds. (Rolston Decl. ¶ 12; Ricatto Dep. (Mullen Decl. Ex. A) (ECF Doc. 97-1) at 185:3-7 ("Q. Did M3 pay you any money? A. Yes. Q. What for? A. Their apportionment of what they needed to pay."); Bischoff Dep. (Cohen Decl. Ex. VV) (ECF Doc. 103-48) at 102:12-14 ("Well, the property from my understanding was bought by Mike Ricatto, using his money and ours [M3's].").)

## CONCLUSION

For the foregoing reasons, M3 respectfully requests that the Court grant partial summary judgment in favor of M3 and against Mr. Ricatto as to liability on Count I of M3's Counterclaims for breach of contract under the LOC; and deny Mr. Ricatto's cross-motion for summary judgment; and grant to M3 such other and further relief as the Court may deem just and proper.

DATED:    May 13, 2021
          New York, New York

MULLEN P.C.

_____
Wesley M. Mullen
Michael Weinstock
Mullen P.C.
200 Park Avenue, Suite 1700
New York, NY 10166
(646) 632-3718
wmullen@mullenpc.com
mweinstock@mullenpc.com

*Counsel for M3 Innovations Unlimited, Inc.*