UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DAVID S. NEUFELD, *in his capacity as Curator of the Estate of Michael Ricatto*,

        Plaintiff-Counterclaim Defendant,

-v.-

M3 INNOVATIONS UNLIMITED INC.,

        Defendant-Counterclaim Plaintiff.

18 Civ. 8404 (KPF)

**ORDER**

---

KATHERINE POLK FAILLA, District Judge:

    It is hereby ORDERED that:

1. All proceedings in this case are STAYED for a **period of 150 days** from the date of this Order, pending a possible final settlement of all claims between the parties;

2. Unless the case is earlier dismissed, the Parties shall file a status report on or before **June 24, 2024**; and

3. The parties shall comply with the terms of the Settlement Agreement annexed hereto as Exhibit A, and incorporated by reference in this Order. *See Kokkonen* v. *Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994). The Court will retain jurisdiction to enforce the Settlement Agreement.

    The Clerk of Court is directed to terminate the pending motions at docket entries 150, 153, 156, and 162.

SO ORDERED.

Dated: January 18, 2024
        New York, New York

_____<br>
KATHERINE POLK FAILLA<br>
United States District Judge

# Exhibit A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DAVID S. NEUFELD, *in his capacity as Curator of the Estate of Michael Ricatto*,

    Plaintiff-Counterclaim Defendant,

- v -

M3 INNOVATIONS UNLIMITED INC.,

    Defendant-Counterclaim Plaintiff.

No. 18 CV 8404 (KPF)

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Settlement Agreement") is dated January 18, 2024 (the "Effective Date"), between David S. Neufeld, in his capacity as personal representative of the Estate of Michael Ricatto (the "Estate"), M3 Innovations Unlimited, Inc. ("M3"), and Kyle Kietrys. The Estate, M3, and Mr. Kietrys, together are referred to as the "Parties."

**WHEREAS**, on or about September 14, 2018, Mr. Michael Ricatto ("Mr. Ricatto") commenced a lawsuit styled *Ricatto v. M3 Innovations Unlimited, Inc. et al.*, Case No. 18-CV-8404 (KPF), in the United States District Court for the Southern District of New York (the "Lawsuit") by filing a complaint against M3, its CEO, Mr. Kietrys, and John and Jane "Doe" defendants (collectively, the "Underlying Defendants");

**WHEREAS,** on or about January 7, 2019, Mr. Ricatto filed an amended complaint in the Lawsuit;

**WHEREAS**, by Order dated December 6, 2019, the Court dismissed Mr. Ricatto's three-count Amended Complaint against the Underlying Defendants (ECF Doc. 40);

**WHEREAS**, on or about March 1, 2019, M3 filed an answer asserting counterclaims in the Lawsuit against Mr. Ricatto;

**WHEREAS**, by Order dated March 16, 2022, (ECF Doc. 115), the Court granted M3's motion for partial summary judgment on its claim for breach of contract as to liability only, (*see* ECF Doc. 118), and denied Mr. Ricatto's motion for summary judgment as to M3's claims, (ECF Docs. 115, 118);

**WHEREAS**, Mr. Ricatto died in or about March 2023, (ECF Doc. 124);

**WHEREAS**, on or about July 13, 2023, the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida (the "Probate Court") appointed Mr. David S. Neufeld as Curator of the Estate of Mr. Ricatto, in a case captioned *In Re: Estate of: Ricatto, Michael P*, Case No. PRC230001483 (the "Probate Action"), with authority, inter alia, to prosecute or defend claims in any jurisdiction for the protection of the Estate (*see* ECF Doc. 140);

**WHEREAS**, on or about July 31, 2023, the Court granted M3's motion to substitute David S. Neufeld, in his capacity as Curator of the Estate of Michael Ricatto, as the new Plaintiff-Counterclaim Defendant in the Lawsuit, and terminated Mr. Ricatto, the former Plaintiff-Counterclaim Defendant, as a party to the Lawsuit, (ECF Doc. 140);

**WHEREAS**, on or about January 9, 2024, the court in the Probate Action discharged Mr. David S. Neufeld as Curator of the Estate of Michael Ricatto and appointed Mr. David S. Neufeld as Personal Representative of the Estate of Michael Ricatto;

**WHEREAS**, on or about January 10, 2024, the court in the Probate Action filed Letters of Administration, stating in part that "there shall be no sale, transfer or distribution of any estate asset without Court order";

**WHEREAS**, a trial of M3's claims against the Estate is set to commence on February 5, 2024, at 9:00 a.m. in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, NY, (ECF Doc. 141);

WHEREAS, the Parties have opposed the claims and counterclaims asserted and to be asserted in the Lawsuit, have denied and continue to deny all liability to one another, and have asserted and would continue to assert defenses;

WHEREAS, the Parties have agreed to settle and fully dispose of the Lawsuit, and all other claims that each Party has or had or may have, whether known or unknown, against the other (excluding claims for breach of this Settlement Agreement) by exchanging general releases, on the terms and in exchange for the consideration set forth herein; and

WHEREAS, the Parties have agreed that the United States District Court for the Southern District of New York shall retain jurisdiction to enforce this Settlement Agreement, and mutually covenant to take all steps necessary or requested by the Court to effectuate such jurisdiction;

NOW THEREFORE, in reliance on the above recitals, which the Parties represent and agree are true and correct and incorporated herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

1. Payment: The Estate agrees to pay M3 the sum of $3,125,000.00 (three million one hundred twenty-five thousand United States dollars) (the "Settlement Amount"), to be received by M3 within 120 days of the Effective Date. The Estate shall pay the Settlement Amount in good and available funds in the form of a wire transfer to the following Trust Account maintained by M3's counsel or to such other account as M3 may designate by written notice in compliance with Paragraph 14 below:

Bank:
Bank Address:

Bank Account:

Bank Routing:
SWIFT Code:
Account Name:
Address:



2. <u>Real Property Transfer</u>: The Estate agrees to cause the transfer of the Real Property (as defined below) to M3 or its designated affiliate, with closing and transfer of title to the Real Property to occur within 120 days of the Effective Date (the "<u>Closing</u>"). Terms and deal structure for the Real Property Transfer (as defined below) and the Closing shall be confirmed in a definitive agreement to be negotiated in good faith by the Parties prior to the Closing (the "<u>Real Property Closing Agreement</u>"). For purposes of this Settlement Agreement, "<u>Real Property</u>" shall mean Parcel 1 (APN 3129-251-37-0-000) and Parcel 6 (APN 3129-251-42-0-000) of Parcel Map 19782, in the City of Adelanto, County of San Bernardino, State of California, as per map recorded in book 248, pages 73 and 74 of Parcel Maps, in the office of the county recorder of said county, and which parcels where thereafter conveyed to Golden State Lion, LLC (hereinafter "Estate Seller") by deed dated September 15, 2017 (the "Deed"), a copy of which is annexed to this Settlement Agreement as <u>Exhibit A</u>. The transfer of Real Property described in this Paragraph, and referenced elsewhere in this Settlement Agreement, shall be referred to as the "<u>Real Property Transfer</u>".

    a. The Estate agrees to pay or cause the Estate Seller to pay all reasonable costs arising from or related to the Real Property Transfer and/or the Closing, including (without limitation) documentary realty transfer or other taxes, fees, deed recording and other costs, and title insurance fees, *provided, however,* that M3 shall bear its own attorneys' fees associated with the Real Property Transfer and the Closing.

4

    b.  The Estate covenants that, at the time of the Closing: (i) it shall cause title to the Real Property to be conveyed by Estate Seller to M3 or its designated affiliate (unless another deal structure is agreed to in the Real Property Closing Agreement); (ii) title to the Real Property shall be free and clear of all liens, mortgages, security interests, obligations, and encumbrances; and (iii) the Real Property shall not be in violation of any variances or other limitations of any nature that run with the land by law (*e.g.*, zoning ordinances, and deed restrictions).

 3. <u>Time of the Essence.</u> Time is of the essence with respect to all provisions of this Agreement.

 4. <u>General Releases</u>. Provided that the Estate timely and fully complies with its obligations under Paragraphs 1 and 2 above, and effective as of the moment of such full compliance, each of the Parties agrees to the following general releases of claims against the other, which releases are intended to be general and to preclude all claims of any kind by each Party or its related persons against the other or its related persons, as hereinbelow described:

    a.  <u>General Release of the Estate</u>: M3 and Mr. Kietrys, and their past and present direct and indirect parents, subsidiaries, affiliates, divisions, predecessors, assigns, beneficiaries, and representatives (including heirs, administrators and executors), and all of their respective past and present insurers, agents, shareholders, officers, directors, employees, attorneys, and representatives (the "<u>M3 Releasors</u>") hereby irrevocably, unconditionally, completely, fully and forever release, relinquish, waive, and forever discharge the Estate and its past and present direct

5

and indirect parents, subsidiaries, affiliates, divisions, predecessors, assigns, and representatives, and all of its and their respective past and present personal representatives, insurers, agents, shareholders, officers, directors, employees, attorneys, and representatives (the foregoing, collectively, the "Estate Releasees") from any and all claims, suits, demands, causes of action, attorneys' fees, judgments, penalties, debts, liabilities, rights, damages, costs, expenses or losses of every kind or nature, whether known or unknown, that the M3 Releasors or any M3 Releasor ever had or now has, including claims that were raised or could have been raised, up to the date of the execution of this Settlement Agreement. This is a general release: the claims released and discharged by the M3 Releasors include, *but are expressly not limited to*, the claims asserted or that could have been asserted in the Lawsuit. The claims released and discharged by the M3 Releasors include all claims of any kind against the Estate Releasees under federal, state, or local constitution, law, regulation, ordinance, common law or equity. Notwithstanding the foregoing, this release of claims shall not apply to claims arising under this Settlement Agreement.

b. General Release of M3 and Mr. Kietrys: The Estate and its past and present direct and indirect parents, subsidiaries, affiliates, divisions, predecessors, assigns, beneficiaries, and representatives (including heirs, administrators, personal representatives, and executors), and all of its or their respective past and present insurers, agents, shareholders, officers,

6

directors, employees, attorneys, and representatives (the "Estate Releasors") hereby irrevocably, unconditionally, completely, fully and forever release, relinquish, waive, and forever discharge M3 and Mr. Kietrys and their past and present direct and indirect parents, subsidiaries, affiliates, divisions, predecessors, assigns, and representatives, and all of their respective past and present insurers, agents, shareholders, officers, directors, employees, attorneys, and representatives (the foregoing, collectively, the "M3 Releasees") from any and all claims, suits, demands, causes of action, attorneys' fees, judgments, penalties, debts, liabilities, rights, damages, costs, expenses or losses of every kind or nature, whether known or unknown, that the Estate Releasors or any Estate Releasor ever had or now has, including claims that were raised or could have been raised, up to the date of the execution of this Settlement Agreement. This is a general release: the claims released and discharged by the Estate Releasors include, *but are expressly not limited to*, the claims asserted or that could have been asserted in the Lawsuit. The claims released and discharged by the Estate Releasors include all claims of any kind against the M3 Releasees under federal, state, or local constitution, law, regulation, ordinance, common law or equity. Notwithstanding the foregoing, this release of claims shall not apply to claims arising under this Settlement Agreement.

5. M3's Representations: M3 and Mr. Kietrys represent that (1) they have the legal

7

capacity and authority to execute, deliver and perform their obligations under this Settlement Agreement; (2) that the execution, delivery and performance of this Settlement Agreement has been duly and validly authorized by all required corporate or equivalent action; (3) that the individuals who have signed this Settlement Agreement have legal power, right, and authority to make this Settlement Agreement and to bind M3; (4) that the actions and covenants set forth under this Settlement Agreement do not conflict with or violate any provision of law, regulation, policy, contract, deed of trust or other instrument to which M3 or Mr. Kietrys is a party or by which M3 or Mr. Kietrys is bound; and (5) that this Settlement Agreement constitutes a valid and binding obligation on M3.

6. <u>The Estate's Representations</u>: The Estate represents that (1) it has the legal capacity and authority to execute, deliver and perform its obligations under this Settlement Agreement; (2) that the execution, delivery and performance of this Settlement Agreement has been duly and validly authorized by all required persons or authorities, and that no other approval is required to authorize the performance of the Estate's obligations under this Settlement Agreement except for, in respect of the Estate's obligations under Paragraphs 1 and 2 above, approval by the Circuit Court of the 17th Judicial Circuit in Broward County, Florida, as further set forth in paragraph 7 below; (3) that the individual who has signed this Settlement Agreement has full legal power, right, and authority to make this Settlement Agreement and to bind the Estate; (4) that the actions and covenants set forth under this Settlement Agreement do not conflict with or violate any provision of law, regulation, policy, contract, deed of trust or other instrument to which the Estate is a party or by which the Estate is bound; and (5) that this Settlement Agreement constitutes a valid and binding obligation on the Estate.

7. <u>Approval By the Probate Court:</u> It is understood and agreed that, in order to perform the Estate's obligations under Paragraphs 1 and 2 above, the Estate must obtain approval of this Settlement Agreement from the Probate Court. The Estate's remaining obligations under this Settlement Agreement are not contingent on such approval.

8. <u>Waiver of Section 1542 Rights and Benefits</u>: In giving the releases set forth in this Settlement Agreement, which include claims that may be unknown to the Parties at present, the Parties acknowledge that they have read and understand Section 1542 of the California Civil Code, which reads as follows: "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party." The Parties hereby expressly waive and relinquish all rights and benefits under section 1542 and any law or legal principle of similar effect in any jurisdiction with respect to the releases granted herein, including but not limited to the release of unknown and unsuspected claims granted in this Settlement Agreement.

9. <u>Stipulation of Dismissal</u>: Promptly upon the Estate's timely compliance in full with its obligations under Paragraphs 1 and 2 above, counsel of record for both Parties shall execute and furnish to the Court a proposed order dismissing with prejudice all of the claims and counterclaims in the Lawsuit.

10. <u>Retention of Jurisdiction / Stay Order</u>: Upon execution of this Settlement Agreement, the Parties agree to request that the United States District Court for the Southern District of New York (1) stay the Lawsuit; and (2) retain jurisdiction over this Settlement Agreement, as more fully described below.

  a. To that end, promptly upon the execution of this Settlement Agreement by all parties, counsel for M3 will seek the Court's entry of a proposed order (i) staying the Lawsuit for a period of 150 days; and (ii) incorporating by reference the terms of this Settlement Agreement (including by annexing it to the proposed order), so as necessarily to make compliance with the Settlement Agreement a part of the proposed order. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994). The Estate agrees that counsel for M3 may represent that the Estate consents to the entry of such an order.

  b. All Parties agree to use best efforts to carry out the Parties' intent that the Lawsuit be stayed and that the Court retain jurisdiction over this Settlement Agreement, including by complying with any orders or directions of the Court regarding its continuing and/or ancillary jurisdiction.

  c. Should the Court decline to retain jurisdiction to enforce the Settlement Agreement, M3 shall have the right to rescind the Settlement Agreement in its entirety, in which case (i) the Settlement Agreement shall be treated as void *ab initio*; and (ii) all Parties agree that M3 may restore its claims against the Estate to the trial calendar.

11. <u>Non-Confidentiality</u>: The Parties agree that this Settlement Agreement is not confidential, will be filed with the Court, and may be disclosed to the public.

12. <u>Governing Law and Jurisdiction</u>: The provisions of this Settlement Agreement shall be governed by and construed in accordance with the laws of the State of New York,

without regard to New York's conflict of law provisions. The Parties expressly consent to the exclusive jurisdiction of the United States District Court for the Southern District of New York for any dispute arising out of or related to the Lawsuit or this Settlement Agreement, and agree that any such dispute is related to the Lawsuit for the purposes of (a) Rule 13 of the Rules for the Division of Business Among District Judges, Southern District of New York; and (b) Local Civil Rule 1.6 of the Southern District of New York. Each of M3, Mr. Kietrys and the Estate hereby irrevocably submits to the personal jurisdiction of the United States District Court for the Southern District of New York for such purposes.

13. <u>Construction</u>: Each of the Parties has participated in the drafting and/or negotiation of the Settlement Agreement after being fully advised by their respective counsel. Therefore, the language of the Settlement Agreement shall not be presumptively construed in favor of or against any of the parties hereto.

14. <u>Unenforceability</u>: If any provision or term of this Settlement Agreement is found invalid or unenforceable, the balance of the Settlement Agreement, and all provisions thereof, shall remain in full force and effect and such invalid or unenforceable provision or term shall be replaced with a provision or term that is valid and enforceable and most closely reflects the intent of the Parties.

15. <u>Entire Agreement</u>: This Settlement Agreement constitutes the entire understanding between the Parties with respect to the subject matter, and supersedes all prior written and oral proposals, understandings, agreements and representations. No amendment or modification of this Settlement Agreement shall be effective unless it is in writing and executed by both Parties. Any waiver by either party of a breach of any provision of this Settlement Agreement shall not operate as or be construed to be a waiver of any other breach

of such provision or of any breach of any other provision of this Settlement Agreement. Any waiver must be in writing. This Settlement Agreement shall be binding upon the Parties and their respective heirs, successors and assigns.

16. <u>Notice</u>: All notices, requests, demands and other communications hereunder shall be deemed effective if made by email to counsel of record in the Lawsuit for the party to be notified, at the email address(es) indicated in PACER.

17. <u>Attorneys' Fees and Costs.</u> If the Probate Court has not approved this Settlement Agreement by the date that is 120 days after the Effective Date, the Estate shall reimburse M3 for up to ninety-nine thousand dollars ($99,000.00) in actual and reasonable attorneys' fees and costs incurred on or after the Effective Date in litigation against the Estate related to the Lawsuit and any action in the Probate Court, including any appeal.

18. <u>Counterparts</u>: The Settlement Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement. Facsimile and electronic signatures will be deemed to constitute original signatures.

[SIGNATURES ON FOLLOWING PAGE]

IN WITNESS WHEREOF, the Parties hereto have executed this Settlement Agreement as of the Effective Date written above.

**M3 INNOVATIONS UNLIMITED, INC.**

By: Kyle Kietrys, its CEO

Date: 1/18/24

**KYLE KIETRYS**

Date: 1/18/24

**THE ESTATE OF MICHAEL RICATTO**

By: David S. Neufeld, its Personal Representative

Date:

**IN WITNESS WHEREOF,** the Parties hereto have executed this Settlement Agreement as of the Effective Date written above.

M3 INNOVATIONS UNLIMITED, INC.

By: _____Kyle Kietrys, its CEO_____

Date: _____

**KYLE KIETRYS**

Date: _____

**THE ESTATE OF MICHAEL RICATTO**

By: _____David S. Neufeld, its Personal Representative_____

Date: January 18, 2024

13